565 A.2d 512

**William PORTER, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, STATE EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 7, 1989.

Decided Oct. 31, 1989.

Stephen P. Gallagher, Stack & Gallagher, P.C., Philadelphia, for petitioner.

Abbott A. Leban, Chief Counsel, for respondent.

Before DOYLE, BARRY, PALLADINO, McGINLEY and SMITH, JJ.

DOYLE, Judge.

Before us for consideration is an appeal by Judge William Porter (Petitioner) from an order of the State Employes' Retirement Board (Board) which, without a hearing, granted Petitioner's application insofar as it permitted him to withdraw his own retirement contributions along with the statutory interest thereon but denied his application in all other respects.

Although we have no record before us the salient facts are not in dispute. Petitioner was appointed to the Court of Common Pleas of Philadelphia County as a judge on December 30, 1971 at which time he became a member of the State Employes' Retirement System (System). He was elected to a full term commencing January 7, 1974 and served for ten years. He was then reelected to a second full term of ten years commencing January 2, 1984. Subsequently, in an order dated February 25, 1988 the Pennsylvania Supreme Court directed that Petitioner be suspended from judicial office, forfeit his office, and further declared Petitioner's office to be vacant. *See Matter of Cunningham,* 517 Pa. 417, 538 A.2d 473, *appeal dismissed sub nom. White v. Judicial Inquiry and Review Board,* —— U.S. ——, 109 S.Ct. 36, 102 L.Ed.2d 16 (1988).[1]

---

1. There can be no reasonable doubt that the Supreme Court in *Cunningham,* 517 Pa. at 444, 538 A.2d at 487, imposed "the sanction of suspension and forfeiture of office" in regard to Judge Porter, al-

The Board determined that because Petitioner had been suspended from judicial office pursuant to disciplinary proceedings instituted under Article V, Section 18 of the Pennsylvania Constitution he had forfeited his right to retirement benefits pursuant to Article V, Section 16(b) of the Constitution. Section 16(b) provides:

> Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years. Former and retired justices, judges and justices of the peace shall receive such compensation as shall be provided by law. *No compensation shall be paid to any justice, judge or justice of the peace who is suspended or removed from office under section eighteen of this article or under article six.* (Emphasis added.)

The Board maintains that the retirement benefits in issue here fall within the purview of "compensation" as that term is employed under Article V, Section 16(b). Accordingly, it denied Petitioner's application for benefits except to the extent that it permitted Petitioner to withdraw his own contributions and statutory interest thereon. Appeal to this Court followed.

Petitioner has raised a raft of constitutional issues which are identical to those raised in the companion case of *King v. State Employees' Retirement System,* —— Pa.Commonwealth Ct. ——, 566 A.2d 323 (1989). As to those issues, we deem the decision in *King* to be controlling. We held therein, in summary, that Section 16(b) mandated that a judge who was removed from office on the basis of misconduct must be denied compensation and that compensation included retirement benefits. We also rejected the arguments that our interpretation of Section 16(b) worked an impairment on the obligation of contracts and that Section

though in the text of that opinion his individual case is identified as docket "No. 120" but in the penultimate paragraph of the majority opinion the summary identifies the JIRB docket number 120 as receiving the more severe sanction of removal from office. The basis for the Supreme Court's order was its determination that Petitioner had accepted a cash gift from a roofers union.

16(b) was inconsistent with the State Employees' Retirement Code [2] (Code) and, accordingly, concluded that Section 16(b)'s provisions must be considered when determining retirement benefits under the Code.

This case however, does have one fact which makes it somewhat different from *King.* Unlike the petitioner in *King,* Petitioner here was *suspended,* not removed from this office. It is clear, however, in the *Cunningham* case that the Supreme Court did more than just suspend Petitioner. It also directed that she forfeit her office. Indeed, it specifically discussed the question of whether suspension could carry with it the penalty of forfeiture from office. It observed, "[w]here a judicial officer breaches the trust vested in one holding that office, the injury is further compounded because a public trust has been betrayed." 517 Pa. at 425, 538 A.2d at 477. The court further reasoned that there is a "need to fill the office with one capable and competent to carry out the responsibilities demanded by the position." *Id.,* 517 Pa. at 426, 538 A.2d at 478. To this end the court wrote:

> Any interpretation of the constitutional sanction of suspension which would preclude the replacement of the offending jurist would serve the interest of the offender and ignore the needs of the offended. Obviously such interpretation must be rejected. We therefore conclude that although the sanction of suspension does not require an automatic forfeiture of the office, we in our discretion can require a forfeiture with the sanction of suspension where it is appropriate. Such a reading still maintains a distinction between the two sanctions [of suspension and removal]. Removal provides for a perpetual bar against ever holding judicial office. Suspension, while permitting the office to be declared vacant, does not impose that perpetual impediment upon a former jurist.

*Id.,* 517 Pa. at 427, 538 A.2d at 478 (footnote omitted).

Petitioner argues that the Supreme Court immediately upon suspending him, "vacated" his office and, hence, his

**2.** 71 Pa.C.S. §§ 5101–5956.

suspension was momentary only. First, we are not inclined to view the Supreme Court's suspension as momentary as such penalty would seem to be nothing more than the proverbial slap on the wrist for what the Supreme Court found to be a serious offense. Second, the notion that the suspension was somehow implicitly vacated immediately after it was imposed is not an interpretation we are inclined to accept inasmuch as we believe that had the Supreme Court intended the suspension to be momentary only, it would have made that clear in its opinion and order. Third, we have searched in vain and cannot find the word "vacated" anywhere in the *Cunningham* opinion. Rather, what the Supreme Court did, and what it clearly stated that it did, was to declare the office *vacant,* not vacated. Its purpose in declaring the office vacant, as the opinion explains, was so that someone could be selected to fill it. This is obvious since the court in the opinion exhibited its concern that the populace would suffer if more judges were not placed quickly into the positions of those individuals who had been suspended or removed because of the Roofers Union scandal.

Our review of *Webster's New Collegiate Dictionary* 1281 (1981) indicates that "vacant" is defined as "not occupied by an incumbent, possessor, or officer." In contrast, "vacate" means "to make legally void: ANNUL" or, as an alternate meaning, "to deprive of an incumbent or occupant." *Id.* Had Petitioner's office been vacated, as he alleges, his argument that he cannot be suspended from an office which no longer exists might have merit. But, because his office was declared *vacant,* the office itself exists although it may not be filled by Petitioner. Thus, Petitioner's novel theory, that his suspension was momentary only, must be rejected by this Court.

There remains, however, the difficult question of whether a suspension should be viewed differently than a removal for purposes of retirement benefits. It is clear that when one is removed from office the sanction includes a perpetual bar upon one becoming a member of the judiciary again.

*Cunningham.* While Petitioner was suspended and forfeited his office, *Cunningham* makes it clear that he is not subject to the perpetual bar. Thus, the question which presents itself is whether Petitioner retains, perhaps in abeyance, some right to his retirement benefits when his suspension is lifted, when and if that event ever occurs.

On the narrow facts of this case, we hold that no such rights continue to exist. We do so because Petitioner was "more than suspended." The Supreme Court directed that in addition to being suspended, he forfeit his office.[3] Thus, we believe that the action herein, while it is a suspension in that it does not forever bar Petitioner from running for judicial office at some future time, is in many ways more akin to a removal, because of the forfeiture, than a "mere suspension." We expressly do not decide the question of whether Petitioner's retirement benefits rights may have remained had he been suspended only and not been subject to forfeiture of office.

Based upon the foregoing discussion, the order of the Board is affirmed.[4]

## ORDER

NOW, October 31, 1989, the order of the State Employes' Retirement Board in the above-captioned matter is hereby affirmed.

CRUMLISH, Jr., President Judge, did not participate in the decision in this case.

3. This fact distinguishes Petitioner's case from those involving normal employee suspensions.

4. We also wish to make it clear that should Petitioner again be appointed or elected to a judicial office at some future time, his new tenure would include entitlement to become a member of the State Employees' Retirement System, from that date onward. This would also be true of any benefit, including retirement, to which he would become entitled as an employee of the Commonwealth in any capacity.

McGINLEY, Judge, dissenting.

I respectfully dissent. As I stated in my dissenting opinion in *Shiomos v. State Employes' Retirement Board*, 128 Pa.Commonwealth Ct. 39, 562 A.2d 969 (1989) "while public retirement benefits are deferred compensation, it does not necessarily, nor reasonably follow that ... retirement benefits are 'compensation'" as that term is used in Article V, Section 16(b) of the Pennsylvania Constitution.

SMITH, Judge, dissenting.

I most respectfully dissent from the majority's determination that Petitioner is not entitled to receive vested retirement benefits due to his suspension and forfeiture of the office of judge.

Since the Pennsylvania Supreme Court's decision in *Retirement Board of Allegheny County v. McGovern*, 316 Pa. 161, 174 A. 400 (1934), public retirement benefits have been viewed as deferred compensation for services actually rendered in the past. *See also Bellomini v. State Employees' Retirement Board*, 498 Pa. 204, 445 A.2d 737 (1982). Judicial compensation is divided into two parts—present which is the salary paid and deferred which is the pension payment. *Goodheart v. The Honorable Robert P. Casey*, 521 Pa. 316, 555 A.2d 1210 (1989). One who has rendered service for this agreed compensation has earned both his salary and pension rights. *Wright v. Allegheny County Retirement Board*, 390 Pa. 75, 134 A.2d 231 (1957). These contractual rights are fixed upon an employee's entry into the system and cannot be subsequently diminished nor adversely effected. *Association of Pennsylvania State College & University Faculties v. State System of Higher Education*, 505 Pa. 369, 479 A.2d 962 (1984).

The State Retirement Board's decision to deny retirement benefits to Petitioner was based upon Article V, Section 16(b) of the Pennsylvania Constitution which states that:

(b) Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years. Former and retired justices, judges and justices of the peace shall

receive such compensation as shall be provided by law. No compensation shall be paid to any justice, judge or justice of the peace who is suspended or removed from office under section eighteen of this article or under article six.

The term "compensation" was apparently construed by the Board as including retirement benefits. The pension rights due Petitioner which have vested for prior service performed by him are separate and distinct from the judicial salary received by Petitioner during his tenure in office. Moreover, Petitioner's pension rights as a state employee should be determined not by the constitutional provision relied upon by the Board but rather by provisions of the State Employees' Retirement Code, Sections 5101—5956 of the Act of March 1, 1975, P.L. 125, 71 Pa.C.S. §§ 5101—5956 (1974 Code). Section 5955 provides in pertinent part:

Pension rights of State employees shall be determined solely by this part or any amendment thereto,....

Applying firmly established principles of statutory construction, it is clear from the above language that the legislature intended pension rights to be decided separately from compensation as that term is referred to in Article V, Section 16(b).

The Supreme Court has unequivocally stated that the Retirement Code of 1959, amended in 1974, established a comprehensive retirement system for state employees, including judges. *Goodheart;* 71 Pa.C.S. § 5101. Thus, it would appear that the Retirement Code is the exclusive legislative pronouncement and authority in this area. Additionally, the Supreme Court has held in *Catania v. State Employees' Retirement,* 498 Pa. 684, 450 A.2d 1342 (1982) that a pension plan is unalterable once a public employee has commenced employment and joined the retirement system. It would therefore appear that a public employee who has become eligible for retirement possesses certain vested and contractual rights which may not thereafter be disturbed even by the legislature. *See Geary v. Allegheny County Retirement Board,* 426 Pa. 254, 257, 231 A.2d 743, 745 (1967).

The majority is thus impaled upon the horns of a dilemma. If it destroys Petitioner's vested pension rights, the majority places Petitioner in the same category as those judges "removed" from office. *See Matter of Cunningham,* 517 Pa. 417, 538 A.2d 473, *appeal dismissed sub. nom. White v. Judicial Inquiry & Review Board,* —— U.S. ——, 109 S.Ct. 36, 102 L.Ed.2d 16 (1988). Those individuals may never again return to the judges' pension plan. However, if Petitioner is elected to the same office in the future, which he has the right to accomplish by the express ruling of the Supreme Court in *Cunningham,* Petitioner has the right to return to the judges' pension plan at the same level he held at the time of suspension by paying into the plan any contributions returned to him at the time of suspension. *See* 71 Pa.C.S. §§ 5907, 5504.[1] This result unquestionably clashes with the majority's determination that Petitioner has no right to receive his vested pension benefits.

Simply put, it has to be one or the other. Petitioner is either permanently barred from receiving his pension benefits or he is entitled to receipt of his benefits presently. The Supreme Court distinguished Petitioner's case from

---

**1.** Section 5907(d) provides as follows:

(d) Credit for previous service or change in membership status.—Any active member or eligible school employee who desires to receive credit for his total previous State service or creditable nonstate service to which he is entitled, or a joint coverage member who desires to become a full coverage member, shall so notify the board and upon written agreement by the member and the board as to the manner of payment of the amount due, the member shall receive credit for such service as of the date of such agreement.

Section 5504(a) states in pertinent part:

(a) Amount of contributions.—The contributions to be paid by an active member or eligible school employee for credit for total previous State service or to become a full coverage member shall be sufficient to provide an amount equal to the regular and additional accumulated deductions which would have been standing to the credit of the member for such service had regular and additional member contributions been made with full coverage in the class of service and at the rate of contribution applicable during such period of previous service and had his regular and additional accumulated deductions been credited with statutory interest during all periods of subsequent State and school service up to the date of purchase.

others which arose out of the same series of transactions in *Cunningham*. Petitioner reported the gift on his 1985 annual financial reporting statement and thus did not violate the rule requiring reporting. He was never charged with any criminal offense [2] and most importantly, Petitioner was not permanently barred from holding the office of judge. Hence, there exists no legal basis for the destruction of Petitioner's vested pension rights.

The dilemma here is further complicated by the fact that the Board on the one hand has determined that Petitioner is not entitled to his pension benefits due to his suspension from office while on the other hand, the Supreme Court has ruled in *Cunningham* that Petitioner warrants the sanction of suspension and forfeiture of office and cessation of his "salary" only. In *Cunningham*, the Supreme Court expressly stated with regard to the sanctions imposed that:

> The sanction of removal, which carries with it an automatic bar from ever holding judicial office in this Commonwealth in the future, expressly mandates forfeiture of the office.... [A] vacancy is created and the errant jurist can be replaced. Equally apparent is that the sanction of 'discipline', which does not provide for the termination of the jurist's *salary* was not intended to include a cessation of his or her performance of the duties of the office of judge....

> While suspension, like removal, requires that the *salary* cease from the date of the entry of such an order, Art. V, § 18(h),[6] it does not carry with it the automatic forfeiture of office that is mandated for the sanction of removal under subsection (1).[7] Art. V, § 18(1). It would be an overly broad interpretation of subsection (1) to read it as prohibiting this Court, in the discretion vested under the article, from imposing a forfeiture of office, where appropriate, in view of the gravity of an offense that would require the imposition of a suspension.

**2.** *See* Sections 1311—1324 of the Public Employee Pension Forfeiture Act, Act of July 8, 1978, P.L. 752, *as amended,* 43 P.S. §§ 1311—1324, which provides for forfeiture of pension rights in the event of a criminal conviction.

We therefore conclude that although the sanction of suspension does not require an automatic forfeiture of the office, we in our discretion can require a forfeiture with the sanction of suspension where it is appropriate.[8] Such a reading still maintains a distinction between the two sanctions. Removal provides for a perpetual bar against ever holding judicial office. Suspension, while permitting the office to be declared vacant, does not impose that perpetual impediment upon a former jurist. (Citation and footnotes omitted.) (Emphasis added.)

*Cunningham,* 517 Pa. at 426–427, 538 A.2d at 477–478. The Supreme Court's decision to order suspension of Petitioner and to declare his office vacant provided that his "salary" shall cease, or stated alternatively, Petitioner's present compensation. It is therefore logical to conclude that the import of the Supreme Court's order was such that it did not require the result created by the majority's decision in the instant matter.[3]

---

**3.** In *Goodheart,* although the Supreme Court referred to retirement benefits as a "part of total compensation", it was considered compensation in the context of whether post–1974 judges were entitled to receive the same retirement benefits as received by pre–1974 judges of the courts of common pleas. For purposes of interpreting Article V, Section 18(b) of the Constitution, I do not believe that a compensation package is synonymous with compensation as that term is referred to in the Constitution.