624 A.2d 279

**Ruth B. HARPER, Andrew J. Carn and Nicholas B. Mohlemann, Petitioners,**

v.

**STATE EMPLOYEES' RETIREMENT SYSTEM, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 18, 1991.

Decided April 6, 1993.

Elliot A. Strokoff, for petitioners.

Susan J. Forney, Sr. Deputy Atty. Gen., for respondent.

Michael K. Hanna, Sr., for amici curiae.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

CRAIG, President Judge.

The three petitioners are Pennsylvania legislators who initially took office *after* the March 1, 1974 effective date of the 1974 State Employees Retirement Code,[1] which eliminated as to them, and as to all others taking office after that effective date, an option to receive substantially greater and potentially earlier pension benefits under "Class D–3" membership which have remained available to legislators who took office *before* March 1, 1974, subject to making greater contributions.

Petitioners have moved for a summary judgment declaring that they are entitled to Class D–3 membership. The respondent, State Employees' Retirement System, has moved for summary judgment in its favor, to dismiss this action.

1. State Employees' Retirement Code of 1974, 71 Pa.C.S. §§ 5101–5956, revising the Retirement Code of 1959, *as amended* by Act of July 29, 1965, P.L. 264, *formerly* 71 P.S. §§ 1725–101 through 1725–807.

## QUESTION PRESENTED

In view of the principle that a public employee's compensation includes pension entitlements as well as salary,[2] is there an unconstitutional disparity of pension compensation between post-February 1974 legislators and their colleagues who took office earlier? More specifically,

1. Is there a denial of equal protection of laws under the constitutions of the United States or of the Commonwealth of Pennsylvania;

or

2. Are the legislator petitioners here entitled to the benefit of an analogy to the constitutional concepts requiring the legislature to insure the independence of the unified judicial system by providing a uniform, single-tier standard of compensation, including pension entitlements, for the judiciary, without reference to time of taking office.[3]

The bottom-line question is this: Is there a constitutional barrier which prohibits a reduction of compensation for legislators who take office after the reduction has been adopted by the legislature itself?

This court's decision is to deny summary judgment to petitioners and grant it to the system, holding that the two levels of pension options for legislators established by the 1974 amendment are not susceptible to invalidation by the courts because:

1. As to the principle of equal protection of laws, no majority decision of the Pennsylvania Supreme Court has provided any such basis for invalidating pension provisions which provide different entitlements for public officials, including judges, who have taken office at different times; and

2. *Baker v. Retirement Board of Allegheny County*, 374 Pa. 165, 169, 97 A.2d 231 (1953); *Wright v. Retirement Board of Allegheny County*, 390 Pa. 75, 79, 134 A.2d 231, 233 (1957).

3. *Goodheart v. Casey*, 521 Pa. 316, 555 A.2d 1210 (1989), *Klein v. State Employees Retirement System*, 521 Pa. 330, 555 A.2d 1216 (1989), both affirmed upon reargument, 523 Pa. 188, 565 A.2d 757 (1989).

2. The principle of providing constitutional protection for the independence of the unified judicial system through uniform single-tier compensation and other means, as against detrimental action by the legislative branch, is not applicable with respect to two-tier pension provisions for legislators who themselves possess the lawmaking and appropriations powers necessary to determine their own compensation in all respects.

Contrary to a claim of nonjusticiability raised by amicus curiae alone, the issue here is suitable for resolution by the courts.

■ However, the judiciary should forebear from using constitutional principles designed for the protection of the independence of the judiciary in a tripartite system of government, in a way which would interfere with the legislature's discretion to provide for the patterns of its own compensation. The constitutional constraints which are necessary for the protection of the independence of the judicial branch, from undue interference by either of the other two branches, are not necessary to insure the independence of the legislature within its own sphere as to matters entirely under its control, by virtue of Pa. Const. art. 2, § 8, which provides simply that legislative compensation shall be fixed by law; i.e., the legislature determines its own compensation.

## FACTS

In this declaratory judgment action addressed to the original jurisdiction of this court, petitioners Harper, Carn and Mohlemann, members of the Pennsylvania House of Representatives, and respondent State Employees' Retirement System submitted to the court a stipulation of facts intended to permit this court, by resolving questions of law, to grant or refuse summary judgment. References to stipulation paragraphs are stated in brackets.

Petitioner Ruth B. Harper took office December 1, 1976 and has remained a member of the House since that date. [2] Petitioner Andrew J. Carn took office on December 1, 1982

and is still a member. [3] Petitioner Nicholas B. Mohlemann first began service as a House member on December 1, 1974 and retired effective December 1, 1990. [6]

Before March 1, 1974, legislators could change from the basic Class A pension membership by electing the option of Class D membership, under which the member contributes a higher percentage of salary in return for receiving a higher Commonwealth contribution to their pensions and receiving higher benefits. [11] In addition, under the 1959 Code, Class D-3 members were entitled to an early retirement benefit after only six years of service instead of the ten years of credited service required for Class A members. [21, 22]

After a study and recommendations by the Commonwealth Compensation Commission, the Retirement Code of 1959 was amended by the State Employees' Retirement Code of 1974, 71 Pa.C.S. §§ 5101–5956, effective March 1, 1974. Under the new 1974 Code, the option to elect class D-3 retirement system membership was eliminated as to persons becoming members of the system after March 1, 1974—persons such as petitioners, who are able to be only Class A members without such option.

Under the 1974 Code, members of the General Assembly receive benefits according to the same formula as other state employees with Class A memberships entitled to retire at age 50 (except for some members of the State Police). [23]

Members of the General Assembly who are Class A members of the system contribute the same percentage of their salaries to the retirement system as do other state employees hired at the same time, except for members of the judiciary. [19]

The 1974 amendment affects the petitioners as follows.

Petitioner Carn, as a post-February 1974 legislator, did not have the ten years of service required of a Class A member for retirement as of December 1, 1990 and, as of that date, had a present value of his retirement account of $17,046.80. However, as a Class D-3 member, petitioner Carn, in addition to owing an additional $48,540.34 in contributions, would have an

account with a present value of $332,870.46 and would have been eligible for retirement as of December 1, 1990, with maximum single-life annuity benefits of $16,934.80.

Petitioner Mohlemann, now retired, would have the respective positions stated below in Class D–3 as compared to Class A, under which he retired:

|  | Class A | Class D–3 |
| --- | --- | --- |
| Contributions and Interest | $ 30,085.28 | $112,596.80 |
| Additional Contrib. and Interest |  | $ 82,511.52 |
| Present Value | $237,230.34 | $889,613.77 |
| Maximum Single–Life Annuity | $ 15,040.00 | $ 56,400.00 |

With respect to the $56,400 figure last stated, the cap on annuity actually paid is limited to the highest annual compensation received as a legislator which, in Mr. Mohlemann's case, was $47,000.

Petitioner Harper's status under Class A as compared to Class D–3 is indicated below:

|  | Class A | Class D–3 |
| --- | --- | --- |
| Contributions and Interest | $ 26,601.01 | $101,396.51 |
| Additional Contrib. and Interest |  | $ 74,795.50 |
| Present Value | $154,606.31 | $579,773.68 |
| Maximum Single–Life Annuity | $ 13,160.00 | $ 49,350.00 |

As above, the cap on her single life annuity would also be limited to her highest annual compensation as a legislator, which is $47,000.

Under the law, Class D–3 members contribute 18.75% of their salaries, while Class A members who joined before July 22, 1983 contribute 5% and Class A members after that date contribute 6.25% of their salaries. [31, 32]

The Commonwealth contribution, for 1990–91, for Class A, was 14.5% and for 1991–92, 11.03% of salary. For Class D–3 members, the Commonwealth contribution was 54.38% of salary for 1990–91 and 41.36% of salary for the 1991–92 fiscal year.

Upon actuarial assumption that *all* legislators would be allowed the option to become Class D–3 members within three

months, an actuary has calculated that the unfunded liability of the retirement system as of December 1, 1990 would increase by $21.7 million dollars, to be amortized over 20 years, assuming also that such new D–3 members would pay additional contributions and interest within 3 years. [38]

The total membership of the General Assembly was and is 253, consisting of 203 members of the House and 50 members of the Senate. As of November 30, 1990, 217 members of the General Assembly were Class A members, and 36 were Class D–3 members. As of December 1, 1990, 227 members of the General Assembly were Class A members of the Retirement System and 26 were Class D–3 members. [18]

## ANALYSIS OF ISSUES

### Equal Protection of Laws

In addition to relying upon the U.S. Constitution's Fourteenth Amendment provision that "no state shall ... deny to any person within its jurisdiction, the equal protection of the law," the petitioners also rely upon *Fischer v. Department of Public Welfare*, 509 Pa. 293, 502 A.2d 114 (1985), to claim equivalent protection under Pa. Const. art. 1, § 1, which provides that "all. men are born equally free and independent...." and Pa. Const. art. 3, § 32, which prohibits the passage of special laws, directly, or indirectly by the partial repeal of a law.

The petitioners contend that the discrimination issue in this case should be examined under a strict scrutiny standard, drawn from the categorization stated in *James v. SEPTA*, 505 Pa. 137, 477 A.2d 1302 (1984), as follows:

Under a typical fourteenth amendment analysis of governmental classifications, there are three different types of classifications calling for three different standards of judicial review. The first type—*classifications implicating neither suspect classes* nor *fundamental rights*—will be sustained if it meets a '*rational basis*' test. (Citation omitted.) In the second type of cases, where a *suspect classification* has been made or a *fundamental right* has been *burdened*,

another standard of review is applied: that of *strict scrutiny*. (Citation omitted.) Finally, in the third type of cases, if *'important'* though not fundamental *rights* are affected by the classification, *or* if *'sensitive classifications'* have been made, the United States Supreme Court has employed what may be called an intermediate standard of review or a *heightened standard* of *review*.

505 Pa. at 145, 477 A.2d at 1305–1306 (emphasis added).

More specifically, petitioners rely on the opinion announcing the judgment in *Klein*, stating that the two-tier retirement compensation system for judiciary must be strictly scrutinized to determine if the classification has been narrowly tailored and is necessary to achieve a compelling state interest.

As to judges, the opinion stated:

We hold that such classification cannot survive such scrutiny; indeed, there is not even a rational basis for the arbitrary time-base classification, let alone compelling state interest.

521 Pa. at 347, 555 A.2d at 1225.

However, in *Klein*, that equal protection analysis did not command a majority of the Pennsylvania Supreme Court. A total of four of the seven justices disassociated themselves from the equal protection foundation; one justice dissented, and a concurring opinion, representing three other justices, stated:

To sustain an Equal Protection challenge in a case such as this where a suspect class is clearly absent, one initially must identify a right which has been offended by a particular classification. Appellant and the Court fail to determine what right has been implicated here.

521 Pa. at 349, 555 A.2d at 1226.

Specifically, the concurring opinion pointed out that the right involved in *Klein* was the right of judges to employment and specifically their compensation. On this point, the concurring opinion concluded:

In this instance, the rate of compensation was established when the judges in question sought election to the office.

Clearly, their action is properly deemed to be an acceptance of the prevailing salary at the time they assumed the office. There is no suggestion, and it would be ludicrous to argue, that they were in any way coerced in making the judgment to seek the office. Therefore, there is no factual basis to support a deprivation that impinges upon a right. Mere dissatisfaction with one's compensation cannot be transformed into a constitutional challenge even though another employee may be receiving greater compensation for similar services.

521 Pa. at 351, 555 A.2d at 1227 (footnote omitted).

The affirmance (at 523 Pa. 188, 565 A.2d 757) after reargument of the initial judgment (521 Pa. 330, 555 A.2d 1216), discussed above, was by a majority of two of the justices who had joined in the earlier concurring opinion negating the equal protection basis; one justice still dissented, one had retired, and the remaining justices were recused.

The respondent system claims that the classification between post-February 1974 legislators and earlier members is a rational one, particularly in view of the report of the Commonwealth Compensation Commission, describing the heavy unfunded liability anticipated from the D–3 class.

■ Legislators who had taken office with the expectation of the Class D–3 option are constitutionally entitled to retain that option to avoid an unconstitutional impairment of contract. *See Association of Pa. State College and Univ. Facilities v. State System*, 505 Pa. 369, 479 A.2d 962 (1984); *Catania v. State Employees' Retirement Board*, 71 Pa.Commonwealth Ct. 393, 455 A.2d 1250 (1983).

However, legislators who first assumed office after March of 1974 entered upon a new compensation contract.

The stipulation shows that the passage of time will eliminate the dual classification altogether, as conveyed by the fact that, as of December 1990, there were only 26 D–3 members left in the General Assembly, with 227 members being in Class A without the D–3 option.

■ There is no suspect classification here; the strict scrutiny standard is inapplicable in that there is involved no personal right such as the right to travel, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), free speech, *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), or the right to vote, *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

Receiving government economic benefits is not a fundamental liberty interest. *Martin v. Unemployment Compensation Board of Review,* 502 Pa. 282, 466 A.2d 107 (1983), *cert. denied,* 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 541 (1984).

Upon this analysis and for these reasons, we must conclude that there exists no precedential doctrine of the Pennsylvania Supreme Court permitting application of equal protection of laws concepts to the problem at hand.

*The Legislature, Needing No Protection From Itself, Does Not Present An Analogy To Principles Protecting The Judicial System From Legislative Interference*

Petitioners urge that the court should disturb the legislative classification effected when the legislature itself passed the 1974 State Retirement Code amendment. Petitioners contend that we should apply to legislators those principles which were declared by the Pennsylvania Supreme Court for the protection of the judicial system in *Goodheart v. Casey,* 521 Pa. 316, 555 A.2d 1210 (1989).

In *Goodheart,* with three justices concurring in the result and one justice dissenting, the opinion announcing the judgment pointed out that the division of our governmental powers into independent co-equal executive, legislative and judicial branches "prevents the danger of tyranny which is inherent in the concentration of absolute power in a single body." *Goodheart,* 521 Pa. at 320, 555 A.2d at 1211, citing *Beckert v. Warren,* 497 Pa. 137, 439 A.2d 638 (1981).

The opinion referred to the shield of judicial independence in Pa. Const. art. V, § 16(a), providing that the compensation of the judiciary "shall not be diminished during their terms of

office, unless by law applying generally to all salaried officers of the Commonwealth." (521 Pa. at 319, 555 A.2d at 1211.)

The opinion also quoted from *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 57, 274 A.2d 193, 199 (1971), to the effect that:

A legislature has the power of life and death over all the Courts and over the entire judicial system. Unless the legislature can be compelled by the courts to provide money which is reasonably necessary for the proper functioning of the courts, our entire Judicial system could be extirpated, and the legislature could make a mockery of our form of government with its three co-equal branches—the Executive, the Legislative and the Judicial.

521 Pa. at 320, 555 A.2d at 1211–12. Quoting *Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577 (1949), the *Goodheart* opinion points out the dependence of the judicial branch upon the legislature for funds to meet necessary expenses. (521 Pa. at 320, 555 A.2d at 1212.)

Accordingly, the "judiciary must *possess* the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities. . . ." *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. at 52, 274 A.2d at 197 (emphasis in original).

Thus

it is the constitutional duty and obligation of the legislature in order to insure the independence of the judicial (as well as the executive) branch of government, to provide compensation adequate in amount and commensurate with the duties and responsibilities of the judges involved. To do any less violates the very framework of our constitutional form of government.

*Glancey v. Casey*, 447 Pa. 77, 86, 288 A.2d 812, 816 (1972).

On the basis of these principles, the Supreme Court concluded that compensation of the judiciary must be "adequate" in order that the independence and proper functioning of the judiciary be not threatened.

In *Goodheart,* the Supreme Court also relied upon the 88–year old decision in *Commonwealth ex rel. Carson v. Mathues,* 210 Pa. 372, 59 A. 961 (1904), which stated that there can be only one adequate compensation for each of the judges of the same court.

Also, from the *Mathues* opinion comes the statement:

It is within the power and the duty of the legislature, and of the legislature alone, to determine, *in the first instance,* what is adequate compensation, and after this determination has been reached, then it is the right of the judges to receive what is fixed.

210 Pa. at 396, 59 A. at 971 (emphasis added).

Accordingly, the courts were constitutionally forced to intervene to protect the concept of a uniform adequate compensation, established to guard against any possible coercion of the judicial branch by the legislature's power of the purse.

The Pennsylvania Constitution, in 1968, declared and established the concept of a unified judicial system in Pa. Const. art. 5, § 1.

Petitioners contend that, just as the judiciary is now a coordinated integrated unified system, the legislative power of the Commonwealth should be viewed as being in a coordinated integrated unified legislative system. Petitioners quote Pa. Const. art. 2, § 1, which states:

The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a senate and a house of representatives.

However, there is a distinction. The judiciary has determined, in *Goodheart, Klein* and other cases, that there must be a policy of uniform compensation for like positions within the judicial system, to safeguard judicial independence. To prevent coercion by another branch of government, the judiciary must have a shield against the impact of any potentially coercive interference with its affairs by another branch of government.

On the other hand, it is the legislature itself which has enacted a two-tier pension policy for its own membership.

The legislature is not being threatened from either of the other two branches of government.

Instead, we have the anomaly of seeing lawmakers, who are affected by the legislature's own policy, turning instead to the coordinate branch, the judiciary, to request judicial interference with a policy which the legislators adopted for themselves.

## CONCLUSION

Therefore, because the case does not present an invasion of any judicially recognized equal protection rights, and does not present any parallel to *Goodheart* and *Klein,* in that it does not involve interference of one governmental branch's policy by another, the request by these three petitioners that the courts intervene to impose a different policy upon the legislature must be denied and this action dismissed, pursuant to grant of summary judgment in favor of the system.

## ORDER

NOW, April 6, 1993, petitioners' motion for summary judgment is denied, respondent's motion for summary judgment is granted, and this action is dismissed.

COLINS, concurs in the result only.

KELLEY, J., did not participate in the decision in this case.