624 A.2d 286

**William C. RYBAK, Petitioner,**

v.

**STATE EMPLOYEES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1991.

Decided April 6, 1993.

Petition for Allowance of Appeal Granted July 26, 1993.

Richard J. Orloski, for petitioner.

Nicholas Joseph Marcucci, Deputy Chief Counsel, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

CRAIG, President Judge.

This case is a companion case to *Harper v. State Employees' Retirement System,* 154 Pa.Commonwealth Ct. 573, 624 A.2d 279 (1993), dealing with the 1974 State Employees' Retirement Code, 71 Pa.C.S. §§ 5101–5956, which revised the Retirement Code of 1959, Act of June 1, 1959, P.L. 392, *as amended, formerly* 71 P.S. §§ 1725–101 through 1725–807, repealed by the Act of March 1, 1974, P.L. 125. The 1974 Code eliminated, as to all legislators taking office after its March 1, 1974 effective date, an option to receive substantially greater and potentially earlier pension benefits—Class D–3 Membership—an option which remained available to legislators who took office before March 1, 1974, provided that they were willing to make employee contributions in an increased amount.

## FACTS

The situation of petitioner, former Representative Rybak, is different from the *Harper* case petitioners, all of whom began their first legislative service after March of 1974, in that Mr. Rybak was initially elected to the Pennsylvania House of Representatives in 1966 and served three consecutive terms

until he did not succeed in obtaining reelection in 1972. He then, at age 51, applied for and began receiving a Class D–3 superannuation retirement annuity under the former Retirement Code of 1959.

However, Mr. Rybak was again elected to the House in 1980 (after the 1974 change in the law) and served five more successive terms to 1990, when he again applied for and received a superannuation retirement annuity effective December 1, 1990. With respect to the second pension, the respondent State Employee's Retirement Board (SERB) rejected his request to be recognized again as having the Class D–3 membership option and granted him only the Class A membership applied by the 1974 Code to all legislators taking office after March of 1974.

The Class D–3 benefits earned and accrued from Representative Rybak's first six years of legislative employment remain in effect, and he is currently receiving those benefits.

There is no doubt that benefits received for his post–1974 years of service, if calculated on the basis of Class D–3 would be more than the benefits available under Class A. Succinctly summarized, SERB's brief acknowledges as much, by granting that his ten years of service after 1974 (1981–1990) produce a maximum single life annuity pension benefit of $9,400 per year in terms of Class A ($47,000 final average salary × .02 standard annuity factor × 10 years of service × 1.00, Class A multiplier), but a maximum single life annuity computed on the Class D–3 basis would be $35,250 per year ($47,000 × .02 × 10 × 3.75, Class D–3 multiplier). 71 Pa.C.S. § 5102, § 5702(a)(1).

## ISSUES

In this appeal from that action by SERB, petitioner Rybak seeks reversal of the rejection of Class D–3 benefits, raising issues in two respects, as follows:

1. Does the two-tiered pension system violate the petitioner's right to equal protection of laws under the Constitutions of the United States and of Pennsylvania?

2. Does the refusal to permit the petitioner to maintain Class D–3 pension membership with respect to his latest period of legislative service constitute an unconstitutional impairment of his contract rights?

## ANALYSIS OF ISSUES

### Equal Protection

■ Representative Rybak's first claim is that the two-tiered retirement compensation classification created by the Code of 1974 violates the constitutional right of equal protection of laws, relying upon the analysis and rationale expressed in the opinion announcing the judgment of the Pennsylvania Supreme Court in *Klein v. State Employees' Retirement System,* 521 Pa. 330, 555 A.2d 1216, *aff'd after reargument,* 523 Pa. 188, 565 A.2d 757 (1989).

However, in the companion *Harper* case decided simultaneously with this case, our analysis of the opinion announcing the judgment of the court in *Klein* has noted that the equal protection rationale did not command a majority of the Pennsylvania Supreme Court. Mr. Rybak's dependence hence rests upon an equal protection analysis by a minority of the court, rejected by one dissenting justice and three concurring justices.

This court therefore has been compelled to conclude that there is no precedential doctrine of the Pennsylvania Supreme Court which permits application of equal protection concepts to the two-tiered pension system enacted as to the judiciary, and no perceived basis for concluding that it could nevertheless be applied to members of the legislature.

In this case, neither side can find any basis for applying a strict scrutiny approach to equal protection on the basis that there is a suspect classification or a fundamental right, nor any important or sensitive classification warranting a heightened standard of review, *James v. SEPTA,* 505 Pa. 137, 145, 477 A.2d 1302, 1305–06 (1984). Both sides agree that the appropriate standard of review is the rational basis test:

> The touchstone of ... equal protection, is whether the law in question is rationally related to a legitimate state goal, or whether the state action arbitrarily works to deny an individual of life, liberty or property. *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 70, 436 A.2d 147, 157 (1981); *appeal dismissed*, 456 U.S. 940, [102 S.Ct. 2002, 72 L.Ed.2d 462 (1982) ].

The legitimate state goal here was actuarial soundness, as recommended in the 1972 Report of Commonwealth Compensation Commission, 65 P.S. § 371 appendix pp. 96–99, because the retirement system had "degenerated into a growing deficit position." *Id.*, p. 97.

The Pennsylvania Supreme Court has approved two-tier pension plans where shielding the independence of one branch of government from another was not involved. In *City of Allentown v. Local 302, International Association of Firefighters*, 511 Pa. 275, 512 A.2d 1175 (1986), the Pennsylvania Supreme Court interpreted the Pennsylvania Municipal Retirement Law, Act of February 1, 1974, P.L. 34, *as amended*, 53 P.S. §§ 881.101–881.501, to permit a two-tier plan. Moreover, in *Pennsylvania Federation of Teachers v. School District of Philadelphia*, 506 Pa. 196, 484 A.2d 751 (1984), the Pennsylvania Supreme Court indicated that an increased employee contribution rate, which would be invalid if applied to pre-amendment employees, could be validly applied to those entering employment after the amendment. 506 Pa. at 202, 484 A.2d at 754.

### *Unconstitutional Impairment of Pension Contract Rights*

█ Mr. Rybak also specifically attacks 71 Pa.C.S. § 5306(b), purporting to change the class membership of any person who discontinues and then resumes service after March 1, 1974, as unconstitutional on the ground that it would effect an unconstitutional impairment of contract.

When Mr. Rybak entered the legislature in 1966, he contends, he was entitled to full credit for each year of service thereafter despite the subsequent break in his employment.

The pivotal question with respect to this claim, therefore, is whether Mr. Rybak resumed service in 1981 under the same contract with which he entered service in 1966 or in 1981 embarked upon a new second contract.

Mr. Rybak, because he began receiving benefits under the 1959 Code after 1972 and received those benefits continuously until he returned to employment in 1981, contends that he has remained a member of the system throughout and therefore must be regarded as remaining under the 1959 Code contract in his 1981–1990 decade of service.

As support for the proposition that earlier employment bars later modification of benefits, Representative Rybak cites *Baker v. Retirement Board of Allegheny County*, 374 Pa. 165, 97 A.2d 231 (1953), *Association of Pa. State College and Univ. Faculties v. State System*, 505 Pa. 369, 479 A.2d 962 (1984), *Wright v. Retirement Board of Allegheny County*, 390 Pa. 75, 134 A.2d 231 (1957), *McKenna v. State Employees' Retirement Board*, 54 Pa.Commonwealth Ct. 338, 421 A.2d 1236 (1980), *aff'd*, 495 Pa. 324, 433 A.2d 871 (1981).

However, those four cases all involved continuous active employment without any break in service or any resumption of service after a cessation.

*Retirement Board v. McGovern*, 316 Pa. 161, 174 A. 400 (1934); *McBride v. Retirement Board of Allegheny County*, 330 Pa. 402, 199 A. 130 (1938), and *Hickey v. Pittsburgh Pension Board*, 378 Pa. 300, 106 A.2d 233 (1954), also dealt with employees in uninterrupted employment.

Only *Klein*, also cited by Representative Rybak, involved a break in service, where the claimant had served in the more beneficial Class E–1 judicial category from 1971 until January of 1974. Resuming additional service in 1976, he was allowed by the Pennsylvania Supreme Court to continue in Class E–1 status. However, that result is supported solely by the application of the doctrine of *Goodheart v. Casey*, 521 Pa. 316, 555 A.2d 1210, *aff'd after reargument*, 523 Pa. 188, 565 A.2d 757 (1989), not upon the basis of any theory of a continuing contractual relationship under a single contract. With respect

to the judiciary, the only surviving rationale of the Supreme Court is found in the *Goodheart* holding that uniformity of pension treatment is necessary for protection of the independence of the judiciary against coercive interference by another branch of government.

By reference to our opinion in the companion *Harper* case, we incorporate our discussion of the principles of *Goodheart,* holding that the judiciary, lacking legislative and appropriations powers, must look to the constitutional prohibition against reduction of judicial compensation, Pa. Const. art. V, § 16(a), as a shield against the possibility of coercive interference with the independence of the judiciary. *Harper,* 154 Pa.Commonwealth Ct. 573, 581–585, 624 A.2d at 284–285.

When § 202(1)(d.3) of the 1959 Code, repealed, *formerly* 71 P.S. § 1725–202(1)(d.3), provided that "legislative service rendered subsequent to the effective date of such election [on or after December 1, 1970] shall be credited as service rendered as a member of Class D–3," it applied only so long as the Class D–3 status is part of the terms of the employment contract.

Preceding language in the same section clearly shows the purpose of the section to be to allow those who elected D–3 status before December 1, 1970 to have their previous service treated as D–3, while those who elected D–3 after that date are able to be classed as D–3 only for service rendered after their election.

Mr. Rybak's reliance upon § 208 of the 1959 Code, repealed, *formerly* 71 P.S. § 1725–208, is based upon language which states

(1) When a contributor ceases to be a State employee his credit service is canceled if he withdraws his accumulated deductions, but should he return to state service there shall be restored to him the annuity rights forfeited by him at the time of separation from service, and he shall, at retirement, be entitled to have full credit for each year of service. . . .

This language literally did not apply to Mr. Rybak, who did not withdraw his accumulated deductions. This provision says

nothing about a right to enroll in a particular class upon return to service but merely permits a reinstatement of his accumulated deductions and time credit for his entire service.

In essence, Mr. Rybak would have us consider "membership"—first as an employee, then as a pensioner after initial retirement, and then again as an employee—to be equivalent to a continuous employment contract with the Commonwealth throughout.

However, the 1974 Code, 71 Pa.C.S. § 5102, defines a "member" as an active member, an inactive member, an annuitant or a vestee. Clearly membership as an inactive member, as annuitant or a vestee can continue in the absence of employment.

*Harvey v. Allegheny County Retirement Board*, 392 Pa. 421, 432–33, 141 A.2d 197, 203 (1958), set forth the three-fold categories of immunity or vulnerability to subsequent pension legislation:

1. An employee whose rights have fully vested by obtaining eligibility for pension payment cannot be affected adversely by later legislation changing the terms of the retirement contract;

2. An employee who has not become eligible for a pension may be subject to legislation which changes the terms of the retirement contract if the actuarial soundness of the retirement fund is at stake; and

3. An employee who has not attained eligibility for a pension payment cannot be affected adversely by legislative change if the change does not enhance actuarial soundness.

Significantly, each of the categories refers to the contractual rights of an *employee*, indicating that it is the *employment* which gives rise to the contractual relationship, an analysis consistent with the point that a new employment relationship necessarily involves a new pension contract.

There is nothing in the statutes or case law to contravene the straightforward conclusion that Mr. Rybak, having retired from employment in 1972, then ceased to be a party to an employment contract, and, when he again returned to public

employment in 1981, he did so as a party to a new employment contract, separated from the one that had ended in the earlier decade.

Accordingly, the conclusion must be that Mr. Rybak's two periods of employment involved two distinct employment contracts and two distinct sets of pension rights. In his second period of employment, he began a new contract governed by the 1974 Code, and not by the 1959 Code.

## CONCLUSION

The decision of the board must be affirmed.

## ORDER

NOW, April 6, 1993, the order of the Pennsylvania State Employees' Board, dated January 3, 1991, is affirmed.

KELLEY, J., did not participate in the decision in this case.