**James R. KELLEY, Petitioner**

v.

**STATE EMPLOYEES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 2005.

Decided Jan. 24, 2006.

As Amended Feb. 16, 2006.

Samuel C. Stretton, West Chester, for petitioner.

Nicholas Joseph Marcucci, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, and LEADBETTER, Judge.

OPINION BY Judge FRIEDMAN.

James R. Kelley (Claimant) petitions for review of the April 7, 2005, order of the State Employees' Retirement Board (SERB), which denied Claimant's request to convert his 14.5250 years of service credit earned as a Pennsylvania State Senator from Class A to either Class D–4 or Class AA. We affirm SERB's denial of Claimant's request to convert his Class A service to Class D–4 service; however, we reverse SERB's denial of Claimant's request to convert his Class A service to Class AA service.

Claimant first became an active member of the State Employees Retirement System (SERS) on May 22, 1974, when he took office as an elected member of the Pennsylvania General Assembly. Claimant served in the Senate until November 30, 1988. During that time, Claimant accrued benefits as a Class A member and was credited with 14.5250 years of state service. When Claimant terminated his Senate service, he was vested in SERS retirement benefits, but he did not withdraw his accumulated deductions and did not apply for an annuity. (Findings of Fact, Nos. 2–4, 7.)

From June 21, 1990, to December 31, 2001, Claimant served as a judge of the Commonwealth Court of Pennsylvania. While a judge, Claimant was an active member of SERS and was credited with 11.5278 years of Class A service. However, under *Goodheart v. Casey*, 521 Pa. 316, 555 A.2d 1210, *aff'd on reconsideration*, 523 Pa. 188, 565 A.2d 757 (1989),[1] Claimant

---

1. In *Goodheart,* judges of the courts of common pleas challenged the constitutionality of

elected to become a Class E–1 member of SERS; thus, Claimant's service as a judge is credited as Class E–1. (Findings of Fact, Nos. 8–9, 11, 13.)

The Act of May 17, 2001, P.L. 26, (hereinafter, Act 9) amended the State Employees' Retirement Code (Retirement Code), 71 Pa.C.S. §§ 5101–5956, by creating two new classes of state service, *viz.* Class AA and Class D–4. On October 26, 2001, Claimant requested information from SERS regarding the classes of service available to him for his Class A service in the Senate. On December 17, 2001, SERS informed Claimant that Class A service was the only class available and that Claimant could not convert his Class A service in the Senate to Class AA or Class D–4 service.[2] On December 27, 2001, Claimant sought review of the decision with the SERS Appeals Committee. (Findings of Fact, Nos. 22, 39–41.)

On December 31, 2001, Claimant reached mandatory retirement age, and his service as an active judge ended. Claimant applied for an annuity from SERS with an effective date of January 1, 2002. Claimant's application was subject to a reservation of his claim for Class AA or Class D–4 service credit for his Senate service. SERS calculated Claimant's annuity based on 14.5250 years of Class A service and 11.5278 years of Class E–1 service. (Findings of Fact, Nos. 14–16, 44.)

On February 1, 2002, SERS informed Claimant that the Appeals Committee denied his request to convert his Class A service as a Senator to Class AA or Class D–4 service. On February 20, 2002, Claimant filed a timely appeal. (Findings of Fact, Nos. 42–43.)

In lieu of a hearing, the parties submitted Stipulations and Exhibits to the Hearing Examiner. Claimant argued, *inter alia,* that: (1) Act 9 violated his equal protection rights by excluding judges with prior Class A legislative service from that class of state employees who were entitled to convert their prior Class A service to Class D–4 or Class AA service; and (2) Act 9 impaired his contract for pension benefits. After considering the matter, the Hearing Examiner ruled that Claimant's request for Class D–4 service credit was time-barred because Claimant did not make a request by June 30, 2001, as required by section 5306.2(a) of the Retirement Code, 71 Pa.C.S. § 5306.2(a). With respect to Claimant's request for Class AA credit, the Hearing Examiner concluded that Act 9 did not violate Claimant's equal protection rights or impair his contract for pension benefits. Claimant filed exceptions with SERB, which, on April 7, 2005, denied Claimant's request to convert his prior Class A service to Class AA or Class

the 1974 amendments to the State Employees' Retirement Code, 71 Pa.C.S. §§ 5101–5956, which reduced pension benefits for judges who entered office after March 1, 1974. Our supreme court stated: (1) to maintain the judiciary as a co-equal branch of government, the legislature has a duty under the constitution to provide adequate compensation for judges; (2) there can be but one adequate amount of compensation for each judge of the same court; and (3) compensation includes retirement benefits. Thus, the court held that judges who entered office after March 1, 1974, were to be given an opportunity to pay

back into the system sufficient funds to permit the conversion of their retirement package into the same benefits received by judges who entered office before March 1, 1974. *Id.*

2. We note that Class A members have a 2% benefit accrual rate for each year of service; Class AA members have a 2.5% benefit accrual rate for each year of service; and Class D–4 members have a 3% benefit accrual rate for each year of service. (Findings of Fact, No. 37.)

D–4 service. Claimant now petitions this court for review.[3]

### I. Timeliness of Class D–4 Request

██ Claimant first argues that SERB erred in concluding that Claimant's request to convert his Class A service to Class D–4 service was untimely under section 5306.2(a) of the Retirement Code. We agree.

Section 5306.2(a) of the Retirement Code, which became effective on May 17, 2001, states:

> A *member of the General Assembly* who on the effective date of this section is eligible for Class D–4 membership *may elect* to become a member of Class D–4 ... by filing written notice with [SERB] *before July 1, 2001,* or before the member terminates State service as a member of the General Assembly, whichever occurs first.

71 Pa.C.S. § 5306.2(a) (emphasis added). Because Claimant was not a member of the General Assembly between May 17, 2001, and July 1, 2001, this provision did not apply to him.

In fact, on December 17, 2001, when SERS initially advised Claimant that he could not convert his Class A service to Class D–4 service, SERS stated, "because you are a former member of the General Assembly, and not a current member of the General Assembly ... *§ 5306.2 [is] not applicable to you.*" (R.R. at A–72) (emphasis added). Notably, SERS did *not* inform Claimant that his request to convert Class A service to Class D–4 service was denied because Claimant failed to file a timely notice under section 5306.2(a) of the Retirement Code.

Moreover, in concluding that Claimant's request for Class D–4 service credit was untimely under section 5306.2(a) of the Retirement Code, SERB failed to realize that Claimant's equal protection challenge extends to section 5306.2(a) of the Retirement Code *because* that provision limits the election of Class D–4 membership to current members of the General Assembly. If Claimant were to prevail on his equal protection argument, so that Class E–1 members with prior Class A service in the General Assembly would be eligible for Class D–4 service credit, it would be necessary for SERS to provide notice of this change in the Class D–4 eligibility requirements and an opportunity for newly eligible individuals to elect Class D–4 membership.

### II. Equal Protection

██ The next question is whether Act 9 violates Claimant's equal protection rights by excluding him from those allowed to convert their prior Class A service to Class AA or Class D–4 service. In performing an equal protection analysis, we are guided by the principle that a strong presumption exists that all legislation promulgated by the General Assembly is constitutional. *Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265 (1995).

██ The essence of equal protection under the law is that like persons in like circumstances will be treated similarly. *Id.* However, equal protection does not require that all persons under all circumstances enjoy identical protection under the law. *Id.* Thus, the right to equal protection does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different

---

**3.** Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

treatment, provided that the classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. *Id.* "In other words, a classification must rest upon some ground of difference which justifies the classification and have a fair and substantial relationship to the object of the legislation." *Id.* at 255, 666 A.2d at 268.

Judicial review must determine whether any classification is founded on a real and genuine distinction rather than an artificial one. A classification, though discriminatory, is not arbitrary or in violation of the equal protection clause if any state of facts reasonably can be conceived to sustain that classification. In undertaking its analysis, the reviewing court is free to hypothesize reasons the legislature might have had for the classification. If the court determines that the classifications are genuine, it cannot declare the classification void even if it might question the soundness or wisdom of the distinction.

*Id.* at 255–56, 666 A.2d at 268 (citations omitted).

▇▇▇▇ There are three different types of classifications: (1) those which implicate a suspect class or a fundamental right; (2) those which implicate an important though not fundamental right or a sensitive classification; and (3) those which involve none of these. *Id.* If the statutory classification falls into the first category, the statute is strictly construed in light of the compelling governmental purpose; if the classification falls into the second category, a heightened standard of scrutiny is applied to an important governmental purpose; and if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification. *Id.*

▇▇▇▇ Claimant contends that, under *Klein v. State Employees' Retirement System*, 521 Pa. 330, 555 A.2d 1216 (1989), Act 9 impinges upon the fundamental right of judges to be independent; thus, this court must exercise strict scrutiny. We disagree.

*Klein* involved a constitutional challenge to the 1974 amendments to the Retirement Code, which created a two-tiered retirement system for judges who performed the same functions and duties. Essentially, the amendments provided that judges who entered office after March 1, 1974, received a lesser retirement benefit than judges who entered office before March 1, 1974. Our supreme court was divided as to whether the two-tiered system involved a fundamental right and whether it violated the equal protection rights of judges.

In the Opinion Announcing the Judgment of the Court, Justice Larsen, joined by Justices Zappala and Papadakos, stated that the two-tiered system of benefits is unconstitutional as inimical to and destructive of the "unified judicial system" mandated by Article V, Section 1 of the Pennsylvania Constitution.[4] In a secondary analysis, Justice Larsen held that the creation of unequal classes of judges based solely on their date of entry into the retirement system was arbitrary, unreasonable and unconstitutional under the equal protection provisions of the Pennsylvania Constitution. In so holding, Justice Larsen stated that the affected interest in-

---

4. Justice Larsen stated that the words "unified judicial system" required that all judges of a single level, or court, performing similar functions and exercising similar authority be paid at the same rate of compensation. *Klein.* Claimant suggests that this same rea-

soning applies to members of the General Assembly performing the same duties. However, our supreme court held otherwise in *Harper v. State Employees' Retirement System,* 538 Pa. 520, 649 A.2d 643 (1994).

volved the independence and integrity of the judiciary, a *fundamental right* requiring strict scrutiny.[5] *Id.*

In a concurring opinion, Justice Nix, joined by Justices Flaherty and Stout, disagreed that there was an equal protection violation, explaining that the interest involved was simply the right to be paid a fair amount for employment. Therefore, the test was whether a *rational basis* existed for giving judges who entered office after March 1, 1974, a lesser retirement benefit than judges who entered office before March 1, 1974. Justice Nix stated that the judges in the case were not coerced into seeking office and accepted the prevailing compensation as fair at the time they assumed office. Thus, there was no deprivation impinging on the right to fair compensation.

Justice McDermott dissented without opinion in *Klein,* implicitly disagreeing that there was an equal protection violation. Thus, four of the seven justices believed that the two-tiered pension system for judges did *not* involve a fundamental right and did *not* violate the judges' equal protection rights.[6]

 Here, then, to determine whether Act 9 violates Claimant's equal protection rights, this court shall employ the rational basis test, which involves a two-step analysis.

First, we must determine whether the challenged statute seeks to promote any legitimate state interest or public value. If so, we must next determine whether

the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests.

*Curtis,* 542 Pa. at 257, 666 A.2d at 269.

## A. Articulated State Interest

 Section 1(2) of Act 9 provides, in pertinent part, as follows:

*Over the past two decades, [the] pension funds have experienced investment returns well in excess of expectations.* As a result, State ... contributions have decreased dramatically to less than 1% of payroll for next year. At the same time, employee contributions range from 5% to 6.25% of payroll. The outstanding investment performance has resulted in the pension funds being over 123% funded, compared to current needs. *The 4% statutory interest rate the employees receive on their pension accounts has consistently been eclipsed by the actual average returns of the funds over the last two decades and also has been less than available private market interest rates.* The fact that employees have been and are projected to continue to contribute at a rate that is materially greater than the employers due to the more than 100% funded status of the plans raises the issue of the extent to which employees should be provided additional benefits. *The increase in benefits for State ... employees provided herein will in effect allow*

---

**5.** Justice Larsen explained that the legislature has the power of life and death over the judiciary because of the legislature's authority to establish funding for the courts, including the compensation of judges. Justice Larsen indicated that the legislature could make a mockery of our form of government by making it impossible through inadequate judicial

compensation for the courts to function as an independent body. *Klein.*

**6.** In *Harper,* our supreme court explicitly stated that, in *Klein,* a majority of the court never adopted Justice Larsen's view that a two-tiered judicial pension system involves a fundamental right requiring strict scrutiny. *Harper.*

*them for the first time to share in the outstanding investment performance of the funds.* To date, that experience has only benefited the employers through reduced contributions to the funds. Even with the increases in benefits provided herein, [the] pension funds are projected to maintain minimal employer contribution rates and at the same time maintain a fully funded status.

In other words, the stated purpose of Act 9, which is legitimate, is to rectify the fact that, for the past twenty years, state employees have received only 4% statutory interest on their required contributions. With the passage of Act 9, the legislature decided to allow state employees to share in the twenty years of higher-than-expected returns on their contributions. Toward that end, the legislature created Class AA and Class D–4.

### B. Reasonably Related to Accomplishing State Objective

The next question is whether the classification adopted in Act 9, which excludes Claimant from those persons allowed to convert prior Class A service to Class AA or Class D–4, is reasonably related to accomplishing the articulated state objective, i.e., sharing with state employees the twenty years of higher-than-expected returns on contributions.

### 1. Class AA

Section 5306(a.1)(3) of the Retirement Code provides, in pertinent part, as follows:

Provided that an election to become a Class AA member is made pursuant to section 5306.1 . . . *a State employee . . .*

*who on June 30, 2001, and July 1, 2001, is . . . a member of Class A . . .* shall be classified as a Class AA member and receive credit for Class AA State service performed after June 30, 2001, upon payment of regular member contributions for Class AA service and, subject to the limitations contained in paragraph (7), *shall receive Class AA service credit for all Class A State service . . . performed before July 1, 2001.*

71 Pa.C.S. § 5306(a.1)(3) (emphasis added). Section 5306.1 of the Retirement Code provides, in pertinent part, as follows:

(a) General rule.—A person who is . . . a member of the system . . . who on July 1, 2001, is eligible for Class AA membership may elect to become a member of Class AA.

(b) Time for making election.—The election to become a Class AA member must be made by the member filing written notice with the board *before January 1, 2002,* or before the member terminates State service . . . whichever occurs first.

(c) Effect of election.—An election to become a Class AA member shall become *effective the later of July 1, 2001, or the date when the election is filed* with the board and shall remain in effect until the termination of employment. . . .

71 Pa.C.S. § 5306.1 (emphasis added).

The Hearing Examiner found, and SERB acknowledged at oral argument, that, under these provisions of Act 9, Class A members who elected Class AA membership and retired before January 1, 2002, received Class AA benefits for prior Class A service *without ever paying the increased employee contributions associated with Class AA membership.*[7] (*See*

---

**7.** This is because, pursuant to Act 9, the "class of service multiplier" for the purpose of calculating Class AA member contributions for state service rendered prior to *January 1, 2002,* is the same as the "class of service multiplier" for Class A contributions. (*See*

Hearing Examiner's op. at 17.) With respect to these individuals, Act 9 simply allowed them to share in the higher-than-expected investment returns on their contributions over the prior twenty years.

Claimant is similarly situated with these individuals. Like them, Claimant paid Class A contributions into the pension fund during the twenty-year period of outstanding investment performance. Like them, Claimant sought Class AA membership and retired before January 1, 2002. Like them, Claimant never was required to pay the increased employee contributions associated with Class AA membership. However, the legislature did not allow Class E–1 members with prior Class A service, like Claimant, to share in the higher-than-expected returns earned on their Class A contributions. By deciding *not* to allow Claimant to share in the higher-than-expected returns earned on *his* money, the legislature, in effect, gave the additional earnings on *Claimant's* Class A contributions to other state employees. Such a result is not reasonably related to accomplishing the articulated purpose of Act 9.

This does not end our inquiry. The Hearing Examiner determined that there were other rational bases for excluding Claimant from those entitled to convert their prior Class A service to Class AA service.

The Hearing Examiner concluded that the Class E–1 exclusion was rational because judges already are entitled to receive benefits in excess of the rank and file state worker. However, Claimant is not seeking increased benefits for his Class E–1 service as a judge. Rather, Claimant is seeking enhanced benefits for his prior Class A service, which, under Act 9, does *not* provide Claimant with benefits that are in excess of the rank and file state worker. In fact, under Act 9, Claimant's prior Class A service yields him benefits for those years of service that are *less than* the benefits of a rank and file Class AA member. Accordingly, Claimant's entitlement to greater retirement benefits for his Class E–1 service does not justify denying Claimant greater benefits for his Class A service.

The Hearing Examiner also concluded that the Class E–1 exclusion was rational because the legislature must be able to adjust compensation packages for state employees within the limits of fiscal resources. However, Act 9 states that, even with the increased benefits, the pension funds are projected to maintain minimal employer contribution rates and at the same time maintain a fully funded status. Moreover, if allowing Claimant and others similarly situated to convert their prior Class A service to Class AA service requires further adjustments to the pension system, the legislature may make appropriate adjustments as needed in the future.[8]

Accordingly, we conclude that SERB violated Claimant's equal protection rights by denying his request to convert his prior Class A service to Class AA service.

## 2. Class D–4

 Section 5306(a.2) of the Retirement Code provides, in pertinent part, as follows:

---

Stipulations of Fact, No. 29, R.R. at A55; *see also* 71 Pa.C.S. § 5102.)

8. We note that the Hearing Examiner made no findings of fact regarding the impact of allowing Class E–1 members like Claimant to convert Class A service to Class AA service. (*Cf.* Findings of Fact, Nos. 35–38.) Indeed, we are unaware that any other excluded member with prior Class A service retired between June 30, 2001, and January 1, 2002.

(2) Provided an election to become a Class D–4 member is made pursuant to section 5306.2 (relating to elections by members of the General Assembly), a *State employee ... who on July 1, 2001, is a member of the General Assembly* and an active member of the system and not a member of Class D–3 *shall* be classified as a Class D–4 member and *receive credit as a Class D–4 member for all State service performed as a member of the General Assembly* not credited as another class other than Class A upon payment of regular member contributions for Class D–4 service and, subject to the limitations contained in paragraph (a.1)(7), shall receive Class AA service credit for all Class A State service....

71 Pa.C.S. § 5306(a.2) (emphasis added). Section 5306.2 of the Retirement Code states that Class D–4 election must be made by July 1, 2001, and that Class D–4 membership shall be effective on July 1, 2001. 71 Pa.C.S. § 5306.2. Thus, unlike Class AA membership, there is no period of time during which Class D–4 members with prior Class A service can retire without paying increased contributions.

In *Donahue v. Public School Employees' Retirement System,* 834 A.2d 655 (Pa. Cmwlth.2003), *aff'd,* 580 Pa. 14, 858 A.2d 1162 (2004), *cert. denied,* 543 U.S. 1122, 125 S.Ct. 1099, 160 L.Ed.2d 1070 (2005), this court held that, where Act 9 requires the payment of increased contributions as consideration for the future receipt of enhanced benefits, Act 9 may limit participation in a new class to contributing members without violating the equal protection clause. Because Claimant did not pay increased contributions for Class D–4 benefits, SERB did not violate Claimant's equal protection rights by denying his request to convert his Class A benefits into Class D–4 benefits.[9]

### III. Impairment of Contract

Article I, Section 17 of the Pennsylvania Constitution states that the legislature shall pass no law impairing the obligation of contracts. Pa. Const., Art. I, § 17. The statutory terms of the Retirement Code are deemed to be contractually binding on the Commonwealth. *Cianfrani v. State Employees' Retirement Board,* 505 Pa. 294, 479 A.2d 468 (1984). Thus, the Retirement Code is in the nature of a contract for pension benefits. For that reason, unilateral modifications in the retirement system may not be adverse to a member who has met retirement eligibility requirements. *Association of Pennsylvania State College and University Faculties v. State System of Higher Education,* 505 Pa. 369, 479 A.2d 962 (1984).

In *Rybak v. State Employees' Retirement Board,* 154 Pa.Cmwlth. 586, 624 A.2d 286 (1993), *aff'd,* 538 Pa. 476, 649 A.2d 431 (1994), a legislator retired in 1972 and

---

**9.** We note that Claimant has *not* argued that the legislature should have allowed *former* Class A members of the General Assembly to *purchase* Class D–4 service credit by paying Class D–4 contributions for their period of Class A service. Claimant's argument is only that, because current members of the General Assembly can convert their prior Class A service to Class D–4 service without paying increased contributions, Claimant should be able to do so. We recognize that the "class of service multiplier" used for calculating Class D–4 contributions for service rendered prior to July 1, 2001, is the same as the Class A "class of service multiplier." *See* 71 Pa.C.S. § 5102. However, it is not true that current members of the General Assembly could convert their prior Class A service to Class D–4 service without paying increased contributions. Act 9 requires that members of the General Assembly who elect Class D–4 membership begin paying the increased contributions as of July 1, 2001, in order to receive Class D–4 credit for their prior Class A service.

received a Class D–3 annuity under the 1959 Retirement Code. He was re-elected in 1980 and retired for the second time in 1990. This time, he received a Class A annuity under the 1974 Retirement Code, which had eliminated Class D–3. The legislator sought another Class D–3 pension, arguing an unconstitutional impairment of his pension contract. This court stated that, when the legislator was re-elected in 1980, he was party to a new employment contract and that the prior contract had ended. *Id.*

▰ Here, the relevant contract between the Commonwealth and Claimant is the 1974 Retirement Code, which provided Claimant with Class A retirement benefits for his years of service in the General Assembly. Act 9 did not modify that contract to Claimant's detriment. Thus, Act 9 did not impair that contract.

Based on the foregoing, we affirm SERB's denial of Claimant's request to convert his Class A service to Class D–4 service; however, we reverse SERB's denial of Claimant's request to convert his Class A service to Class AA service.[10]

Judges SMITH–RIBNER, SIMPSON and LEAVITT did not participate in the decision in this case.

### ORDER

AND NOW, this 24th day of January, 2006, the order of the State Employees' Retirement Board, dated April 7, 2005, is reversed to the extent that it denies James R. Kelley's (Claimant) request to convert his Class A service to Class AA service.

The order is affirmed to the extent that it denies Claimant's request to convert his Class A service to Class D–4 service.

### CONCURRING AND DISSENTING OPINION BY Judge PELLEGRINI.

Because it has been clearly, palpably and plainly demonstrated that the exclusion of certain classes of members being allowed to convert Class A service credit to Class AA service has a rational basis, I respectfully dissent from that portion of the majority's decision finding that Section 5306(a.1)(3) of Act 9[1] violates the equal protection clauses of both the Pennsylvania and United States Constitution. Moreover, the majority's rationale will open the floodgates to many other challenges that will call into question the continuing viability of Act 9[2], both constitutionally and financially.

James R. Kelley (Claimant) became a member of the State Employees Retirement System (SERS) on May 22, 1974, when he was elected as a Senator in the Pennsylvania General Assembly. Claimant continued to serve as a Senator until November 30, 1988. During that time, Claimant's SERS benefits were categorized as Class A. Claimant later served as a judge of the Commonwealth Court of Pennsylvania from June 21, 1990 to December 31, 2001. While serving as a Judge, he elected to become a Class E–1 member.[3] Just before his retirement, the General Assembly enacted Section 5306(a.1)(3) of Act 9, 71 Pa.C.S. § 5306(a.1)(3), allowing state employees who were Class A active members on June

---

10. This opinion is filed pursuant to Commonwealth Court IOP 256(b).

1. 71 Pa.C.S. § 5306(a.1)(3).

2. Act of May 17, 2001, P.L. 26, No. 9, 53 P.S. §§ 5101–5956.

3. Class E–1 is only available to judges and allows them to contribute at a greater percentage than Class A members. It also provides a higher multiplier (in Claimant's case, 1.50) than Class A members (1) which, in turn, results in a greater payment to the member.

30 and July 1, 2001, to elect to become members of Class AA for their past and future State service *only if they were not a member of another class that was already receiving higher benefits which included Class E–1 for judges.*[4] Additionally, under Section 5306(a.2)(1), only active members of the General Assembly as of June 30, 2001 or July 1, 2001, could elect to obtain Class AA credit provided that Class D–4 credit was not or could not have been elected.[5]

When Claimant retired, he applied for an annuity subject to a reservation for Class AA or for his years of service as a Senator. SERS denied his request to change the class of his service credit while a Senator, and Claimant appealed to the State Employees Retirement Board which affirmed. Claimant then appealed to this Court.[6] Determining that 71 Pa.C.S.

§ 5306(a.1)(3) excluded Claimant and, inferentially, all other members of classes similarly excluded by that provision, the majority reverses, finding that there was no rational basis to exclude Claimant from receiving the same credit as active members of the General Assembly and, therefore, that provision of Act 9 violates the equal protection clauses of the United States and Pennsylvania Constitutions.

The majority reasons that the articulated purpose of Act 9 is to correct the contribution return for the past 20+ years during which time state employees have received only 4% interest on contributions that they made to the Retirement Fund which have been eclipsed by the average rate of return. Because Claimant was similarly situated to other members of the Retirement Fund who were in the same

4. 71 Pa.C.S. § 5306(a.1)(3) provides:

Provided that an election to become a Class AA member is made pursuant to section 5306.1 (relating to election to become a Class AA member), a State employee, other than a State employee who is a State police officer on or after July 1, 1989, who on June 30, 2001, and July 1, 2001, is:

(i) a member of Class A, **other than a member of Class A who could have elected membership in a** Class C, Class D–3, **Class E–1** or Class E–2;

\* \* \*

shall be classified as a Class AA member and receive credit for Class AA State service performed after June 30, 2001, upon payment of regular member contributions for Class AA service and, subject to the limitations contained in paragraph (7), shall receive Class AA service credit for all Class A State service, **other than State service performed** as a State police officer or **as a State employee in a position for which the member could have elected membership in** Class C, Class D–3, **Class E–1** or Class E–2, **performed before July 1, 2001.** (Emphasis added.)

5. That section provides:

A person who:

(i) becomes a member of the General Assembly and an active member of the system after June 30, 2001; or

(ii) is a member of the General Assembly on July 1, 2001, but is not an active member of the system . . .

and who was not a State police officer on or after July 1, 1989, shall be classified as a Class D–4 member and receive credit as a Class D–4 member for all State service as a member of the General Assembly upon payment of regular member contributions for Class D–4 service and, subject to the limitations contained in subsection (a.1)(7), if previously a member of Class A or employed in a position for which Class A service could have been earned, shall receive Class AA service credit for all Class A State service, **other than State service performed . . . for which a class of service other than Class A or Class D–4 as or could have been elected or credited.** (Emphasis added.)

6. The Claimant also sought Class D–4 service credit. Because the majority found that Claimant is not entitled to credit for Class D–4, I concur only in that portion of the majority's opinion. I join with the majority where it holds that there was no impairment of contract claims made out under Article I, Section 17 of the Pennsylvania Constitution.

**1186**

position, the majority concludes there was no rational basis for treating him differently than those other members, and he should be allowed to share with state employees the 20 years of higher-than-expected returns on contributions. It holds that:

> By deciding not to allow Claimant to share in the higher-than-expected returns earned on his money, the legislature, in effect gave additional earnings on Claimant's Class A contributions to other state employees. Such a result is not reasonably related to accomplishing the articulated purpose of Act 9.

(Opinion at 1182.) In other words, the majority is espousing that the purpose of the legislation is to give money back to those employees who made contributions on what was earned at that higher-than-expected return. I disagree with the majority because I believe its equal protection analysis is fatally flawed.

The core flaw in the majority's argument is that it looks to the reason behind the enactment of the legislation which is entirely different from the reason why the General Assembly made the classifications at issue. First, the majority assumes that the amount raised is sufficient to allow *all other individuals* to be allowed to convert service or receive increased benefits. While the rate of return may have been greater than expected, that does not necessarily mean that there were sufficient funds to give every member of every class increased pension benefits. The General Assembly, in excluding those classes, made the finding that there was only sufficient funds for Class A members, who did not belong to another class that already received increased benefits, to receive that increase. The General Assembly's exclusion of Class E–1 (judges), Class C (state police and enforcement officers), Class D–3 (legislators), or Class E–2 (district justices) members is valid because all of those

classes already receive pensions at a higher rate than other state employees. This alone is a rational basis for the difference in the classification.

Second, limiting Class AA membership to current Class A members is not irrational because to hold otherwise would mean that giving rights or excluding rights to individuals who are not members of a class itself would be irrational. In *Donahue v. Public School Employees Retirement System*, 834 A.2d 655 (Pa.Cmwlth. 2003), *aff'd*, 580 Pa. 14, 858 A.2d 1162 (2004), *cert. denied*, 543 U.S. 1122, 125 S.Ct. 1099, 160 L.Ed.2d 1070 (2005), we held Act 9 did not discriminate against persons who retired before the Act's effective date of July 1, 2001, because it did not afford them the same increase in retirement benefits provided to those persons still employed and contributing to the respective retirement systems. While we stated the distinction was valid because current members contributed at an increased rate, the underlying basis was that there was a rational basis of treating active employees differently than retired employees because retired employees could not make a contribution. The same rational basis exists for treating current Class A employees differently from Class E–1 employees; otherwise, it would call into question those classifications themselves.

Third, in a similar vein is the majority's conclusion that the higher-than-expected return on contributions has to be allocated to those individuals whose contributions made those returns possible. It would be illogical to limit increased benefits to only current members and not retired members. Over the 20 years mentioned in the preamble, as mentioned by the majority as the basis for its rational class analysis, a substantial amount of those contributions were made by members who retired at the lower Class A rate, some even the day

before the legislation was enacted. It was the interest on their contributions that funded, in part, the increased pensions. To paraphrase the majority's reasoning, by deciding not to allow retired members of those classes to share in the higher-than-expected returns on their money, the General Assembly gave those additional earnings on their contributions to other state employees, and such a result is not reasonably related to the purpose of Act 9.[7]

Fourth, under the majority's reasoning, Class E–1 (judges), Class C (state police and enforcement officers), Class D–3 (legislators), or Class E–2 (district justices) members should also receive increased pensions because even though their pensions are higher, most pay a significantly higher rate of contribution, and those higher contributions received a higher-than-expected of return than expected. Again, to paraphrase the majority's reasoning, by deciding not to allow members of those classes to share in the higher-than-expected returns on their money, the General Assembly gave those additional earnings on their contributions to other state employees, and such a result is not reasonably related to the purpose of Act 9.

Fifth and finally, the majority ignores that classifications are to be presumed constitutional, and we are instructed to look for ways to hold the legislation constitutional—not go out of our way to strike down the legislation. In *Probst v. Department of Transportation, Bureau of Driver Licensing*, 578 Pa. 42, 849 A.2d 1135, 1144 (2004), our Supreme Court stated:

> In applying the rational basis test, we have adopted a two-step analysis. First, we determine whether the challenged statute seeks to promote any legitimate interest or public value. If so, we then determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests. In undertaking this analysis, **we are free to hypothesize reasons the legislature might have had for the classification, and will not declare a genuine classification void even if we might question the soundness or wisdom of the distinction.** Furthermore, we keep in mind that because presumption of constitutionality attaches to any lawfully enacted legislation, the burden is upon the party attacking a statute to rebut the presumption of constitutionality by **a clear, palpable, and plain demonstration that the rational basis test is not met.** (Citations omitted.)

849 A.2d at 1144.

The majority has only considered what made Act 9 possible and has not examined the possible reasons that would justify the legislation, resulting in the opening of floodgates to other claims. Because Claimant has not clearly, palpably and plainly demonstrated that there is not a rational basis for disallowing other class members to convert their previous Class A

---

7. The majority's reasoning calls into question *Donahue*, where we held that Act 9 may limit participation in a class where the Act requires the payment of increased contributions as consideration for future receipt of enhanced benefits. *See* Section 5306(a.2) of Act 9, 71 Pa.C.S. § 5306(a.2). Even though the majority points out that Act 9 requires increased contributions as the basis of its distinction, once the purpose of Act 9 is defined, the majority's conclusion to pay out the higher-than-expected rate of return on contributions erodes that distinction and it becomes meaningless because retired members cannot make contributions—by definition, they are making no earnings on which to make contributions. However, higher-than-expected earnings on their contributions in part are funding the increases in pensions authorized by Act 9.

service to Class AA service, I respectfully dissent.

Judge LEADBETTER joins in this concurring and dissenting opinion.

DISSENTING OPINION BY Judge LEADBETTER.

I join in Judge Pellegrini's well-reasoned dissenting and concurring opinion. I write separately simply to emphasize his point that, "[t]he *core flaw* in the majority's argument is that it looks to the reason behind the enactment of the legislation which is entirely different from the reason why the General Assembly made the classifications at issue." (Op. at p. 1186) In other words, I strongly disagree that in an equal protection analysis the challenged distinction must be rationally related to the general overall purpose of the legislation, since the distinction drawn acts as a *limitation* on the legislation. Rather, the distinction must be rationally related to *some* legitimate government interest which justifies the limitation. Otherwise, almost any limitation on the effect of a law would be doomed from the start. Because I believe the majority has created an unwise and unworkable sea change in equal protection law, I must regrettably dissent.

Judge PELLEGRINI joins this dissenting opinion.