555 A.2d 1210

**Bernard J. GOODHEART, et al.**

**v.**

**The Honorable Robert P. CASEY, in his capacity as Governor of the Commonwealth of Pennsylvania, et al.**

Supreme Court of Pennsylvania.

March 3, 1989.

Reargument Granted May 9, 1989.

Susan J. Forney, John G. Knorr, III, for appellant.

Martin S. Kaufman, General Counsel, for Amicus The Pennsylvania Economy League & The Comm. Foundation.

Henry T. Reath, David K. Wanger, Philadelphia, for appellee.

Robert W. Munley, Archbald, Matthew A. Cartwright, for Amicus Pennsylvania Trial Lawyers Ass'n.

Marc J. Sonnenfeld, David W. Folts, Kristen M. Cuene, Philadelphia, for Amicus Philadelphia Bar Ass'n.

NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

NIX, Chief Justice.

This is an appeal by the State Employees' Retirement Board ("SERB") from an order of the Commonwealth Court granting appellees' motion for summary judgment. Appellees are six active judges of the courts of common pleas of this Commonwealth, who entered judicial service after March 1, 1974, and the Pennsylvania Conference of State Trial Judges. The subject matter of this case concerns the constitutionality of the State Employees' Retirement Code of 1974, 71 Pa.C.S. §§ 5101–5956 ("1974 Code"), which reduced pension benefits for members of the Commonwealth judiciary taking office after March 1, 1974, and the 1983 amendment thereto, which increased the basic contribution without a corresponding increase in benefits.

### I.

The Retirement Code of 1959 ("1959 Code") established a comprehensive retirement system for state employees, including judges. Participation in the system was mandatory, taking effect upon commencement of state service. Regular state employees were entitled to Class A membership which required them to contribute 5% of their gross salary to the system and entitled them to retirement benefits based on a calculation using their final average salaries, their years of service, and a multiplier of 2%. *See* former 71 P.S. §§ 1725–301(1)(a) and 1725–401(1)(a).

All Commonwealth judges were required to contribute to the fund at statutorily prescribed levels. Judges had an option, however, to elect Class E–1 coverage which permitted them to contribute a higher percentage of their salaries and receive proportionately higher benefits than allowed by Class A. Class E–1 required a contribution of 10% of their gross salaries over the first ten years of service and 7.5% over the second ten years. *See* former 71 P.S. § 1725–301(1)(e). Benefits under Class E–1 were calculated by multiplying the judge's first ten years on the bench by the

judge's final average salary and then by a multiplier of 4%. Added to this figure was the product of the judge's additional years on the bench, final average salary, and a multiplier of 3%. *See* former 71 P.S. § 1725–401(1)(e).

Judges also had an option to participate in the system's Social Security Integration Plan ("SSI Plan"). The SSI Plan permitted judges to make an additional retirement fund contribution each year from earnings in excess of the Social Security wage base, and to receive additional corresponding benefits upon retirement. Social Security Integration benefits were calculated by multiplying the average of earnings in excess of the Social Security wage base by the number of years of SSI participation and then by 2%. The pension benefits of judges who assumed office prior to March 1, 1974, are calculated under the 1959 Code. *Catania v. Commonwealth*, 498 Pa. 684, 450 A.2d 1342 (1982).

The 1974 Code eliminated the option for judges to elect Class E–1 coverage and SSI participation. Additionally, the 1983 amendment to the 1974 Code increased the basic employee contribution from 5% to 6.25% of gross salary without a corresponding increase in the benefits level. Only judges assuming office after the effective date of the 1983 amendment are subject to the increased contribution rate. *Association of Pennsylvania State College and University Facilities v. State System Higher Education*, 505 Pa. 369, 479 A.2d 962 (1984).

## II.

Article V, section 16(a) of the Pennsylvania Constitution provides:

(a) Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth.

Pa. Const. art. V, § 16(a).

A basic principle of our form of government is that the executive, the legislative and the judicial are independent,

co-equal branches of government. *Zemprelli v. Daniels,* 496 Pa. 247, 436 A.2d 1165 (1981). The division of these governmental powers prevents the danger of tyranny which is inherent in the concentration of absolute power in a single body. *Beckert v. Warren,* 497 Pa. 137, 439 A.2d 638 (1981). Nevertheless, the crucial function of the separation of powers principle is not separation *per se,* but rather the "checking" power each branch has over the others. *See The Federalist No. 51* (J. Madison). As we explained in *Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 274 A.2d 193 (1971):

> A legislature has the power of life and death over all the Courts and over the entire judicial system. Unless the legislature can be compelled by the courts to provide money which is reasonably necessary for the proper functioning of the courts, our entire Judicial system could be extirpated, and the legislature could make a mockery of our form of government with its three co-equal branches—the Executive, the Legislative and the Judicial.

*Id.,* 442 Pa. at 57, 274 A.2d at 199.

Moreover, as we discussed in *Leahey v. Farrell,* 362 Pa. 52, 66 A.2d 577 (1949), it is imperative that each branch cooperate with the others in order to insure the proper functioning of our government. In *Leahey* we stated:

> Control of state finances rests with the legislature, subject only to constitutional limitations. (Citations omitted.) The function of the judiciary to administer justice does not include the power to levy taxes in order to defray the necessary expenses in connection therewith. It is the legislature which must supply such funds. Under the division of governmental powers it frequently happens that the functions of one branch may overlap another. But the successful and efficient administration of government *assumes* that each branch will cooperate with the others....

*Id.,* 362 Pa. at 57, 66 A.2d 577. (Emphasis in original.)

Although the legislative branch of our government has the power and authority to set the salary scale for the judiciary,

*Glancey v. Casey*, 447 Pa. 77, 288 A.2d 812 (1972), as a co-equal branch of our tripartite form of government, the "[j]udiciary *must possess* the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities...." *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. at 52, 274 A.2d at 197 (emphasis in original). Therefore it follows that this Court has the inherent power to ensure the proper functioning of the judiciary by ordering the executive branch of government to provide appropriate funding so that the people's right to an efficient and independent judiciary is upheld. Furthermore, as we declared in *Glancey v. Casey, supra,* the legislature is obligated to provide adequate compensation. There we explained:

> [E]ven though the Constitution of 1968 simply mandates that judicial compensation shall be "fixed by law" unlike the much wiser and salutory mandates of the constitutions of 1790, 1838 and 1874, which provided that judges should "receive for their services an adequate compensation," it is the constitutional duty and obligation of the legislature in order to insure the independence of the judicial (as well as the executive) branch of government, to provide compensation adequate in amount and commensurate with the duties and responsibilities of the judges involved. To do any less violates the very framework of our constitutional form of government.

*Glancey* 447 Pa. at 86, 288 A.2d at 816.

There is no doubt that judges who assumed office after March 1, 1974, receive different retirement benefits than judges who assumed office prior to that date. Further, in this Commonwealth it is well-settled that retirement benefits are part of total compensation. *Catania v. Commonwealth, State Employees' Retirement Board*, 498 Pa. 684, 450 A.2d 1342 (1982); *McKenna v. State Employees' Retirement Board*, 495 Pa. 324, 433 A.2d 871 (1981). We must determine whether the reduction of retirement benefits coverage and the increase of the employee contribution rate under the 1974 Code and the 1983 amendment thereto

unconstitutionally impair the independent functioning of the judiciary by providing less than adequate compensation. It is significant to note, however, that legislative enactments are presumed constitutional unless plainly in violation of the constitution. *Commonwealth v. Buckley,* 510 Pa. 326, 508 A.2d 281 (1986); *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302 (1984). To begin our analysis, we must consider the meaning of adequate. As the Commonwealth Court correctly stated:

> "Adequate" means sufficient for a specific purpose. In this case, it necessarily means sufficient to provide judges with a level of remuneration proportionate to their learning, experience and elevated position they occupy in our modern society. Inherent in this definition is the increasingly costly obligations of judges to their spouses and families, to the rearing and education of their children and to the expectation of a decent, dignified life upon departure from the bench.
>
> *Goodheart v. Thornburgh,* 118 Pa.Commw. 75, 545 A.2d 399, 401 (1988).

Implicit in the constitutional right for adequate compensation for the judiciary is the public's right to have a competent, independent judicial system supported by competent judges. Without adequate compensation, a competent judicial system is not possible. The determination as to what constitutes constitutionally inadequate judicial compensation depends on whether there is a genuine threat to the independence and proper functioning of the judiciary. *See Beckert v. Warren, supra.*

■ Appellant argues that a violation of the constitutional obligation to compensate judges adequately requires a demonstration that the increased benefits sought were reasonably necessary for the administration of justice, and without such increases, the independent functioning of the judicial branch is impaired. In support of the assertion that appellees have not met this burden, appellant indicates that: a) recent vacancies in the Philadelphia Court of Common

Pleas attracted more applicants than there were openings on that bench; and b) the Class A benefits provided to judges exceed the benefits provided to comparably compensated employees of 90% of 900 private organizations surveyed by appellant. This argument is meritless as these two factors fail to illustrate that judges entering service on or after March 1, 1974, are adequately compensated. We are not convinced that a large number of applicants for judicial vacancies demonstrates the availability of qualified applicants for judicial service. Indeed, the mere fact that one has a law degree does not show that he is competent to be a judge. In addition, we are not persuaded that the compensation of judges is adequate simply because certain private organizations provide fewer retirement benefits than those offered to judges. As we have previously noted, retirement benefits are a *part* of total compensation. To properly compare compensation offered by the private sector with compensation offered by the public sector, total compensation must be evaluated. Moreover, a true comparison cannot be made without considering the training, responsibility, education and experience of the individuals whose salary packages are being compared.

In order to insure the public's right to a competent and independent judiciary, this Commonwealth must maintain its ability to attract and retain the most qualified people. Due to inflation, increased tax obligations and other economic factors, it can only do so by lessening the difference in compensation between judges and lawyers with equal experience and training in the private sector. Otherwise judicial service will no longer be viewed as a viable alternative to the private sector. Traditionally, government service offers pay scales to some extent lower than private industry for comparable positions requiring equivalent training, experience, responsibility and expertise.[1] This disparity is deemed to be offset by the opportunity to render

1. The average cash compensation of partner/shareholder lawyers in large firms in the northeast region of the United States in 1985 was $144,120.00, while the salary of a Pennsylvania trial court judge was $65,000.00. The salary was raised to $80,000 in July 1987.

public service and to participate directly in the governmental process. However, this laudable motive cannot be reasonably expected to overcome the stark realities of the market place. Compensation of appreciably lower than the expected value of those services will inevitably result in the inability to obtain the quality of performance required.

As was pointed out at the State of the Judiciary Address to the General Assembly on April 28, 1987:

More and more able jurists are leaving our benches. Some are going to the federal system and others are returning to private practice. In virtually all cases the exodus is because the individual cannot meet his or her family commitments on the judicial salary presently provided. Judges as members of a family unit like all other citizens, have an obligation to provide their family with a lifestyle at least reasonably commensurate with their training and skills. With the average college tuition today at the rate of approximately $8,500.00 per year, it is understandable why the judge finds the salary provided inadequate to meet his obligations in the rearing of his children.

The problem of pay erosion caused by inflation and the pay disparity between those in the public sector and those in the private sector was recently addressed in an article by former Judge Robert H. Bork of the United States Court of Appeals for the District of Columbia. Although the article concerns federal employees, it is relevant to Pennsylvania judges because their salary levels are lower than their federal counterparts. As former Judge Bork astutely observed:

District Court judges ... now make $89,500.00 a year. When law professors make much more, when youngsters two, three or four years out of law school make more, and can widen the gap with every year they practice, who will want a career on the Federal Bench?

. . .

The answers are obvious: the independently wealthy, the financially unsuccessful, those who intend to stay only a

few years in order to dress up their resumes or, perhaps the most disturbing thought of all, those who crave power.
New York Times (December 23, 1988).

In addition to competing with the private sector for qualified individuals, we must also compete with the salary offered in the federal judicial system. Recognizing that there are individuals who are committed to judicial service and are willing to forego a more lucrative situation in the private sector, we are nevertheless disadvantaged in competing with our federal counterparts in attracting this resource. Between 1967 and 1974 the salaries of Pennsylvania trial judges were basically comparable with those provided for federal district court judges. Today, however, Pennsylvania trial judges earn $80,000, while their federal counterparts earn $89,500. Since 1974 the disparity between comparable judicial salaries for federal and state systems has become increasingly more evident. The significance of this trend is evidenced by an increasing exodus of our most qualified judges who have elected to pursue their judicial careers within the federal system.[2] It is also signif-

2. Since 1974 the following judges have left the Pennsylvania Court system to serve as federal judges:

| Circuit Judges | Entered Federal Service | Location |
|---|---|---|
| William D. Hutchinson | 08–06–87 | Phila., Pa. |
| Richard L. Nygard | 11–07–88 | Erie, Pa. |
| Anthony J. Scirica | 08–06–87 | Phila., Pa. |

| District Judges | Entered Federal Service | Location |
|---|---|---|
| William W. Caldwell | 04–27–82 | Harrisburg, Pa. |
| Maurice B. Cohill, Jr. | 06–01–76 | Pittsburgh, Pa. |
| Richard P. Conaboy | 07–24–79 | Scranton, Pa. |
| Robert S. Gawthrop, III | 12–09–87 | Phila., Pa. |
| Robert F. Kelly | 06–26–87 | Phila., Pa. |
| Edwin M. Kosik | 06–16–86 | Scranton, Pa. |
| Edmund V. Ludwig | 10–17–85 | Phila., Pa. |
| Joseph L. McGlynn, Jr. | 04–19–74 | Phila., Pa. |
| Glenn E. Mencer | 03–19–82 | Erie, Pa. |
| Sylvia H. Rambo * | 07–24–79 | Harrisburg, Pa. |
| Paul A. Simmons | 04–07–78 | Pittsburgh, Pa. |
| D. Brooks Smith | 11–01–88 | Pittsburgh, Pa. |
| William L. Standish | 11–06–87 | Pittsburgh, Pa. |
| Franklin S. VanAntwerpen | 12–09–87 | Phila., Pa. |
| Donald E. Ziegler | 05–02–78 | Pittsburgh, Pa. |

* Served w/the state by appointment only ('75–'76), never elected.

icant in this context to note that the report of the 1989 Commission on Executive, Legislative and Judicial Salaries concluded that the present salaries being paid to the federal judges were inadequate and impeded the system in its efforts to secure the most qualified for judicial service.[3] It necessarily follows that, since our compensation package is clearly below that of the federal system, our inability to attract the most qualified to serve is further compounded.

Eighty-five years ago in *Commonwealth ex rel. Carson v. Mathues*, 210 Pa. 372, 59 A. 961 (1904), Justice Thompson, deciding the case as a single justice of this Court, stated:

> There can be but one adequate compensation for each of the judges of the same court because no matter how much greater the experience of learning of one member of it may be than that of another, there can be no difference in the actual performance of the judicial functions. The judicial genius who brings the highest order of learning and ability to bear in such performance, stands upon the same level with the merest tyro of a judge, whose learning and ability in comparison may be as the shadow is to the substance. It is futile to contend that there may be different adequate compensations for different members of the same court.
>
> *Id.*, 210 Pa. at 427, 59 A. at 981. *See also Newlin v. Harris*, 209 Pa. 558, 58 A. 925 (1904).

An additional observation set forth in *Mathues* is equally pertinent to our instant inquiry.

> It is within the power and the duty of the legislature, and of the legislature alone, to determine, *in the first instance*, what is adequate compensation, and after this

---

3. As we have noted, a compensation packet must be viewed in all of its aspects and not merely equated with the actual salary paid. Under the federal system, a judge receives a lifetime appointment which entitles him to full salary until his death. A judge is eligible to retire and accept senior status at the age of sixty-five. If the judge elects to seek this status, he nevertheless continues to receive full compensation for the remainder of his life. That jurist also receives any increases in salary that may be given after he has made the election to accept senior-judge status.

determination has been reached, then it is the right of the judges to receive what is fixed.

*Id.* 210 Pa. at 396, 59 A. at 971. (Emphasis added.)

Following the dictate of *Mathues,* we must conclude that when the legislature fixed the rate of compensation for the judges of the various courts of common pleas prior to 1974, that rate carries with it the inference that it establishes the adequate compensation for that office. *Mathues* further teaches that there can be but "one adequate compensation for each of the judges of the same court." Under a unified system the courts of common pleas of the various judicial districts must be considered as one court. *Cf., County of Allegheny v. Commonwealth of Pennsylvania,* 517 Pa. 65, 534 A.2d 760 (1987). Thus, any judge of that court must receive the compensation established as adequate by the legislature for the performance of the duties of that office. The disparity created for the post–1974 jurists offends this mandate.

To illustrate the disparity in compensation between judges entering service in the common pleas court before March 1, 1974, and those entering service on or after March 1, 1974, the following hypothetical examples are helpful. A judge who entered judicial service in 1972, retired at the end of 1991 at age 60 after twenty years of service, with a final average salary of $80,000, and was enrolled in the Class E–1 and SSI retirement plans, would receive a pension of $66,566 per year. In contrast, an equivalent judge who entered judicial service after March 1, 1974, and is enrolled in the Class A plan, would receive a pension of $32,000 per year. In present value terms, the same hypothetical judge who entered service prior to March 1, 1974, would be entitled to a pension equal to $827,549, while the hypothetical judge who entered service on or after March 1, 1974, would be entitled to only $397,824.[4]

4. These hypothetical examples are based on an affidavit prepared by the Retirement Counselor for the Administrative Office of Pennsylvania Courts.

It must be emphasized that the issue raised herein differs materially from the dispute which occasioned our decision in *Carroll v. Tate, supra. See also Glancey v. Casey,* 447 Pa. 77, 288 A.2d 812 (1972). In those instances the quarrel centered upon the failure of a legislative body to provide adequate funds for the performance of the mandated judicial responsibilities. Thus the crux of the dispute in those cases was the determination of the adequacy of the funds supplied for the designated purpose. In this case the legislature has designated the compensation package that it has deemed to be adequate for judges serving on the courts of common pleas. Thus there is no dispute as to adequacy but rather the instant complaint relates to the legislative body's departure from its own determination. Having determined the compensation package that should be paid for judges serving on the courts of common pleas, the legislature was bound to provide that same package for all judges serving on that bench. In this setting there is no question of the court's authority to direct that the legislature adhere to its own mandate.

We are therefore constrained to conclude that the pre–1974 retirement benefits must be made available for all judges serving in that capacity and performing the duties of that office.

It is significant, under the procedural posture presented, that we are not here required to determine a level of pay that would be adequate for those serving as judges of the court of common pleas. This is an appeal from an entry of summary judgment. Such a judgment would not properly be entered if factual disputes are required to be resolved. *Matthews v. Konieczny,* 515 Pa. 106, 527 A.2d 508 (1987). Here the rate of compensation for judges prior to 1974 is stipulated. Moreover, it is also conceded that the total compensation package for those judges assuming office after that time is less than that legislatively established for the pre–1974 judges. Therefore, there are no disputed facts remaining to be resolved. The disparity is evident and the

judicial system has the right to require that all of the judges of the class receive the compensation that has been legislatively deemed to be adequate. To accomplish this, the post–1974 judges must be given the opportunity to pay back into the system sufficient funds to permit the conversion of their retirement package into the same benefits received by the pre–1974 judges of the courts of common pleas.

Accordingly, the Order of the Commonwealth Court is affirmed.

STOUT and FLAHERTY, JJ., join in this opinion.

LARSEN, ZAPPALA and PAPADAKOS, JJ., concur in the result.

McDERMOTT, J., dissents.

## ORDER

PER CURIAM:

AND NOW, this 9th day of May, 1989, the Application for Reargument is hereby granted. Appellant is directed to brief the specific enunciated issues in its Application for Reargument and the same shall be filed with the Prothonotary of this district on or before June 9, 1989.

Appellee shall file any reply brief within thirty days of receipt of the appellant's brief, but under no circumstances shall appellee's brief be filed later than July 10, 1989.

Oral argument is denied. See Pa.R.A.P. 2546(b).