932 A.2d 61

**James R. KELLEY, Appellant,**

**v.**

**STATE EMPLOYEES' RETIREMENT BOARD, Appellee,**

**James R. Kelley, Appellee,**

**v.**

**State Employees' Retirement Board, Appellant.**

Supreme Court of Pennsylvania.

Argued May 16, 2007.

Decided Sept. 26, 2007.

488

Samuel C. Stretton, Esq., West Chester, for James R. Kelley.

Nicholas Joseph Marcucci, Esq., PA State Employees' Retirement System, for State Employees' Retirement Board.

Thomas W. Corbett, Jr., Esq., Office of Attorney General, for Attorney General Office, Commonwealth of PA.

Nicholas Joseph Marcucci, Esq., PA State Employees' Retirement System, for State Employees' Retirement Board.

Samuel C. Stretton, Esq., West Chester, for James R. Kelley.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## OPINION

Justice BALDWIN.

### I. Factual and Procedural Background

On January 24, 2006, the Commonwealth Court reversed in part and affirmed in part the order of the State Employees' Retirement Board (SERB) and permitted James R. Kelley (Appellant) to convert his Class A membership status in the State Employees' Retirement System (SERS) to Class AA status while prohibiting him from converting his Class A

membership status to Class D–4 status.[1] Appellant challenges the determination of the Commonwealth Court that he is ineligible for Class D–4 membership status. SERB is the cross-Appellant with respect to the Commonwealth Court's decision, challenging the determination that Appellant can convert his membership status to Class AA.

On May 22, 1974, Appellant became an active member of SERS when he took office as an elected member of the Pennsylvania General Assembly. During his service in the Senate, Appellant accrued retirement benefits as a Class A SERS member. See 71 Pa.C.S. § 5306. At the time he terminated his Senate service on November 30, 1988, Appellant had accrued 14.5250 years of state service as a Class A member. Although, by the end of his Senate service his pension rights had vested, Appellant did not withdraw his accumulated deductions and did not apply for an annuity. From June 21, 1990 to December 31, 2001, Appellant served as a judge of the Commonwealth Court of Pennsylvania, during which time he was credited with 11.5278 years of Class A service as an active SERS member. However, pursuant to *Goodheart v. Casey,* 521 Pa. 316, 555 A.2d 1210 (1989), Appellant elected to have his judicial service credited as Class E–1 rather than Class A.[2]

By the Act of May 17, 2001, P.L. 26, No 9 (hereinafter Act 9) the Legislature added two new classes of state service,

1. While referring to James R. Kelley as the Appellant, we acknowledge that he is the Appellee with respect to the cross-appeal filed by the State Employees' Retirement Board.

2. The State Employees' Retirement Code of 1959 authorized judges to elect class E–1 coverage which permitted them to contribute a higher percentage of their salaries and receive proportionately higher benefits than allowed by Class A. See Former 71 P.S. 1725–301(1)(a) and 1725–401(1)(e). In 1974, the Retirement Code was amended, eliminating the option for judges to elect class E–1 coverage. We observed in *Goodheart* that judges who assumed office after the enactment of the 1974 Retirement Code received different retirement benefits than judges who assumed office prior to that date. Reasoning that this disparity in compensation was unconstitutional, we held that the post–1974 judges must be given the opportunity to pay into the system sufficient funds to permit the conversion of their retirement package into the same Class E–1 benefits received by the pre–1974 judges. *Goodheart,* 521 Pa. at 328, 555 A.2d at 1215–16.

Class AA and Class D–4, to the State Employees' Retirement Code (Retirement Code), *See* 71 Pa.C.S 5306.1 and 5306.2. On October 26, 2001, Appellant requested information from SERS regarding the eligibility of his Class A Senate service for inclusion in the two new classes of service established by· Act 9. On December 17, 2001, SERS informed Appellant that the only class available to him for his Senate service was Class A. SERS further informed Appellant that Act 9 precluded him from converting his Class A Senate service to either Class AA or Class D–4 service.

Appellant sought review of the decision with the SERS Appeals Committee on December 27, 2001. Four days later, on December 31, 2001, Appellant reached the mandatory retirement age and his service as an active judge ended. On January 1, 2002, Appellant applied to SERS for an annuity, specifying that his application was subject to a reservation of his claim for Class AA or Class D–4 credit for his Senate service. SERS calculated that Appellant was entitled to an annuity based upon 14.5250 years of Class A service and 11.5278 years of Class E–1 service. On February 1, 2002, SERS informed Appellant that the Appeals Committee had denied his request to convert his Class A service as a Senator to Class .AA or Class D–4 service. Thereafter, Appellant filed a timely appeal seeking to have his 14.5250 years of Senate service credited as either Class AA service or Class D–4 service, contending that the Act 9 amendments denied him equal protection of the laws in that they impermissibly granted unequal pension benefits to members of the General Assembly, and that they unconstitutionally impaired his contract for pension benefits.

In lieu of a hearing, the parties submitted Stipulations and Exhibits to a Hearing Examiner who found, based on the stipulations that a Class A member would accrue benefits at a rate of 2 for each year of service while Class AA and Class D–4 members' service would be credited at a 2.5 and 3 benefit accrual rate respectively, for each year of service. The Hearing Officer determined that Appellant's total guaranteed annuity payment at the time of his retirement amounted to

$843,567.67. If Appellant succeeded on his claim for Class AA membership, his total annuity payment would increase to approximately $923,536. If Appellant's claim for Class D–4 membership was successful, his total annuity payment would amount to approximately $1,009,922.[3]

The Hearing Examiner ruled that Appellant's application for Class D–4 membership was time barred, noting that 71 Pa.C.S. 5306.2(a) specified that applications for Class D–4 membership must be made in writing to SERS by June 30, 2001. Because he first pursued membership in Class D–4 on October 26, 2001, almost four months after the election period had expired, the Hearing Examiner concluded that his election for Class D–4 membership was untimely, and dismissed Appellant's claim.

The Hearing Examiner then reasoned that the unambiguous language of section 5306(a.1)(3) plainly provided that to qualify for Class AA membership Appellant needed to be a Class A member on June 30 and July 1, 2001. Because he had elected Class E–1 membership, the Hearing Examiner determined that on the critical dates of June 30 and July 1, 2001, he was not a Class A member and was therefore ineligible for Class AA membership status.[4] The Hearing Examiner further found no merit to Appellant's argument that the Act 9 amendments are unconstitutional, concluding that the amendments neither violated Appellant's equal protection rights nor impaired his contract for pension benefits.

3. The Hearing Examiner noted that election of class AA required an increase in contributions in order to obtain the higher contributions associated with Class AA membership. The basic contribution rate is 5. 71 Pa.C.S. 5102. Act 9 required Class AA members to contribute 6.25 of their retirement-covered compensation paid on after January 1, 2002, and 5 of compensation paid before that date. Class D–4 members were required to pay 7.5 of their retirement-covered compensation paid after June 30, 2001, and 5 before that date. *See Kelley v. SERB*, No.2002–02, slip op. of Hr'g Exam'r at 25, n. 2 (SERB April 16, 2004) (Hearing Examiner op.).

4. The Hearing Examiner noted that Section 5306(a.2)(1) and (2) would similarly have disallowed Appellant's claim for Class D–4 membership, had it been timely, since in order to qualify for Class D–4 membership, Appellant needed to have been a member of the General Assembly after June 30, 2001.

Appellant filed exceptions with SERB from the Hearing Examiner's conclusions. SERB agreed with the Hearing Examiner that Appellant failed make a timely election for D–4 membership by filing written notice with SERB before July 1, 2001, and denied Appellant's request to convert his Class A membership to Class D–4. SERB further agreed with the Hearing Examiner that Appellant failed to demonstrate that his equal protection rights were violated or that the Act 9 amendments unconstitutionally diminished his compensation and impaired his contractual rights. SERB additionally agreed that Appellant was ineligible for Class AA membership and that his exclusion from Class AA was not constitutionally impermissible.

Thereafter, Appellant sought review with the Commonwealth Court. A divided five member panel reversed SERB's order to the extent that it denied Appellant's request to convert his Class A service to Class AA service and affirmed SERB's decision to deny Appellant's request to convert his Class A service to Class D–4 service.

Employing a rational basis test to ascertain whether the Act 9 classifications passed constitutional muster, the court determined that the Legislature's objective in passing Act 9 was to rectify the fact that over the previous two decades, the pension funds had experienced higher-than-expected rates of return, and that the amendments were intended to permit employees to share in those higher-than-expected returns on their contributions.[5]

5. Act 9, Section 1(2) provides:

**Over the past two decades, both pension funds have experienced investment returns well in excess of expectations.** As a result, State and school district contributions have decreased dramatically to less than 1 of payroll for next year. At the same time, employee contributions range from 5 to 6.25 of payroll. The outstanding investment performance has resulted in the pension funds being over 123 funded, compared to current needs. The 4 statutory interest rate the employees receive on their pension accounts has consistently been eclipsed by the actual average returns of the funds over the last two decades and also has been less than available private market interest rates. The fact that employees have been and are projected to continue to contribute at a rate that is materially greater than the employers due to the more than 100 funded status of the plans raises the issue of the

In determining whether the Legislature's exclusion of Appellant from membership in Class AA was rationally related to the state purpose of permitting employees to share in the higher-than-expected returns on their contributions, the Commonwealth Court agreed with Appellant that SERB violated his equal protection rights in precluding him from converting his Class A service to Class AA. The Commonwealth Court reasoned that sections 5306.1(b) and (c) of the Retirement Code specified that election to become a Class AA member must be made before January 1, 2002, but that membership in Class AA would become effective on the later of July 1, 2001 or the date on which the election was filed. Since Act 9 only required Class AA members to contribute at the increased rate beginning on January 1, 2002, if an employee elected Class AA membership and retired before January 1 2002, such an employee would be able to receive the enhanced benefits of Class AA service without ever making the increased employee contributions. The Commonwealth Court determined that Appellant was similarly situated with these individuals since he had been a Class A member, he had sought Class AA membership, and he had retired before January 1, 2002. Therefore, the court reasoned that Appellant was entitled to receive Class AA status for his years of Senate service, even without making the higher Class AA contributions on that service.

By precluding Appellant from sharing in the higher returns as a Class AA member, the court reasoned that Act 9 essentially gave Appellant's higher returns on his money to other state employees. Since this result was not rationally related

extent to which employees should be provided additional benefits. **The increase in benefits for State and school employees provided herein will in effect allow them for the first time to share in the outstanding investment performance of the funds.** To date, that experience has only benefited the employers through reduced contributions to the funds. Even with the increases in benefits provided herein, both pension funds are projected to maintain minimal employer contribution rates and at the same time maintain a fully funded status. For at least the next decade, members are projected to continue to contribute at a rate substantially in excess of that required from the employers.
Act of May 17, 2001, P.L. 26 (emphasis added).

to the objective of Act 9, the court held that the exclusion of Appellant from Class AA violated Appellant's equal protection rights.

With respect to Appellant's application for Class D–4 membership, the Commonwealth Court majority reasoned that SERB erred in concluding that Appellant's request to convert his Class A service to Class D–4 service was untimely. The court observed that section 5306.2(a) which specified that members of the General Assembly were required to elect Class D–4 membership before July 1, 2001, became effective on May 17, 2001. Because Appellant was not a member of the General Assembly between May 17, 2001 and July 1, 2001, the Commonwealth Court determined that section 5306.2(a) was inapplicable to Appellant and could not be relied upon to find his application untimely.

The Commonwealth Court additionally reasoned that in finding that Appellant's request for Class D–4 service failed to meet the section 5306.2(a) timeliness requirements, SERB overlooked the fact that Appellant's equal protection argument extended to a challenge of the constitutionality of section 5306.2(a), since section 5306.2(a) limited the election of Class D–4 membership to members of the General Assembly. Therefore, the court determined the question of timeliness could not be resolved absent an analysis of whether Act 9 unconstitutionally excluded him from Class D–4 membership.

The court then reviewed Appellant's argument that the Act 9 amendments unconstitutionally precluded him from Class D–4 membership and determined that SERB neither violated Appellant's equal protection rights nor impaired his contractual obligations in barring him from Class D–4. The court noted that section 5306.2(a) required eligible state employees to elect Class D–4 by July 1, 2001, with membership in Class D–4 becoming effective on that date. Consequently, the court reasoned there was no period of time during which Class D–4 members with prior Class A status could retire and share in the higher Class D–4 returns without paying the increased contributions associated with Class D–4 membership. Appellant however, if permitted to elect Class D–4 membership,

would be able to receive the increased benefits associated with Class D–4 without having to make the required increased contributions. Concluding that section 5306.2(a) did not discriminate between like persons in like circumstances, the court determined that Appellant's equal protection argument lacked merit.

The Commonwealth Court also concluded that the Act 9 amendments did not impair Appellant's contractual obligations. The Commonwealth Court reasoned that the relevant contract between the Commonwealth and Appellant was the 1974 Retirement Code which provided Appellant with Class A retirement benefits for his years of Senate service. Because the Act 9 amendments did not modify that contract to Appellant's detriment, the Commonwealth Court found no merit to Appellant's arguments that his contractual obligations were impaired.

## II. Standard of Review

Appellant asserts that Act 9 violates his right to equal protection of the laws by excluding him from Class AA and D–4 membership. In *Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265, (1995), we set forth the following with respect to equal protection:

The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. In other words, a classification must rest upon some ground of difference which justifies

the classification and have a fair and substantial relationship to the object of the legislation.

*Curtis,* 542 Pa. at 255, 666 A.2d at 268 (citations omitted).

■ The legal framework for evaluating an equal protection challenge to a particular statutory classification consists of three different types of classifications, each of which calls for its own standard of review. We have described this framework as follows:

The types of classifications are: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which involve none of these. Should the statutory classification in question fall into the first category, the statute is strictly construed in light of a "compelling" governmental purpose; if the classification falls into the second category, a heightened standard of scrutiny is applied to an "important" governmental purpose; and if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification.

*Probst v. Com., Dept. of Transp.,* 578 Pa. 42, 56, 849 A.2d 1135, 1144 (2004). Appellant, relying on *Klein v. SERS,* 521 Pa. 330, 555 A.2d 1216 (1989), argues that Act 9 infringes upon the fundamental right of judges to be independent and therefore a strict scrutiny analysis must be employed to determine whether Act 9 violates his equal protection rights. In *Klein,* where the legislation at issue granted some judges greater retirement benefits than others, we utilized a strict scrutiny approach to hold that the classification among judges violated the equal protection clause. We determined in *Klein* that legislation which provided disparate retirement compensation benefits for judges of the same level or court performing the same duties and exercising the same authority, compromised the constitutional mandate for a unified judicial system and threatened the fundamental interest in the independence and integrity of the judiciary. The analysis in *Klein* which concerns unequal compensation among judges, differs from the instant case which concerns disparate compensation benefits

between judges and legislators. Furthermore, *Klein* is a plurality decision of this court and as such, does not constitute binding precedent. *See In Interest of O.A.*, 552 Pa. 666, 676, 717 A.2d 490, 496, n. 4. (1998) ("While the ultimate order of a plurality opinion; i.e. an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority.")

While we stated in *Klein* that "elected public officials similarly situated cannot be paid different compensation when they perform the same functions and exercise the same authority," that determination, has never, in the context of compensation for elected officials, been adopted by a majority of this court. *Klein*, 521 Pa. at 349, 555 A.2d at 1226; *Harper v. SERS*, 538 Pa. 520, 524, 649 A.2d 643, 645 (1994). "[T]he accepted test is whether or not there is a rational basis for [the] classification, unless the classification affects a suspect group or impinges on a fundamental right." *Harper*, 538 Pa. at 524–25, 649 A.2d at 645. Because the legislation at issue in the case at bar, as in *Harper*, does not affect a suspect group or impinge upon a fundamental right, the appropriate test is whether a rational basis for the classifications exists.

■ In applying the rational basis test, this Court employs a two-step analysis. First, we determine whether the challenged statute seeks to promote any legitimate state interest or public value. If so, we then determine whether the legislative classification is reasonably related to accomplishing that articulated state interest. *Kramer v. W.C.A.B. (Rite Aid Corp.)*, 584 Pa. 309, 335, 883 A.2d 518, 534 (2005). The classification need only be directed at the accomplishment of a legitimate governmental interest in a manner which is not arbitrary or unreasonable. *Kramer*, 584 Pa. at 333, 883 A.2d at 532.

In the instant case, the Commonwealth Court concluded that the stated purpose of Act 9, as set forth in section 1(2) of the Act, is to permit employees to share in higher-than expected returns on their contributions over the past twenty

years.[6] While section 1(2) articulates the overall reason for the passage of Act 9, it does not specifically articulate a reason for the Class AA and Class D–4 limitations on membership. We have held however that under a rational basis analysis, "[t]he courts are ... free to hypothesize reasons why the Legislature created the particular classification at issue and, if some legitimate reason exists, the provision cannot be struck down, even if its soundness or wisdom might be deemed questionable." *Kramer*, 584 Pa. at 335, 883 A.2d at 534.

### III. Class AA

In the case at bar, SERB excluded Appellant from Class AA membership in accordance with 71 Pa.C.S. 5306(a.1) which reads, in pertinent part, as follows:

(a.1) Class AA membership.

 (3) Provided that an election to become a Class AA member is made pursuant to section 5306.1 (relating to election to become a Class AA member), a State employee, other than a State employee who is a State police officer on or after July 1, 1989, who on June 30, 2001, and July 1, 2001, is:

 (i) a member of Class A, other than a member of Class A who could have elected membership in a Class C, Class D–3, Class E–1 or Class E–2;

 . . .

 shall be classified as a Class AA member and receive credit for Class AA State service performed after June 30, 2001, upon payment of regular member contributions for Class AA service and ... shall receive Class AA service credit for all Class A State service, other than State service performed as a State police officer or as a State employee in a position for which the member could have elected membership in Class C, Class D–3, Class E–1 or Class E–2, performed before July 1, 2001.

 . . .

**6.** *See* note 4.

We agree with SERB that in order to elect Class AA membership, section 5306(a.1) required Appellant to be a member of Class A on June 30 and July 1, 2001. That section excluded from Class AA membership those Class A members who could have elected, *inter alia,* membership in Class E–1.[7] On the specified dates of June 30 and July 1, 2001, Appellant had elected to become a Class E–1 member, pursuant to our decision in *Goodheart,* and had made the required contributions to have all of his service as an active judge on the Commonwealth Court credited as Class E–1. The requirements of section 5306(a.1) rendered Appellant ineligible for Class AA membership by virtue of his election of Class E–1 status.

■ Appellant asserts that section 5306(a.1) violates the requirements of equal protection in that it unconstitutionally excludes him, as a Class E–1 member with prior legislative service, from electing Class AA membership. In reviewing Appellant's equal protection argument to determine whether the classification was rationally related to a legitimate government interest, the Hearing Examiner observed, and SERB, agreed that membership in Class E–1 permitted Appellant to acquire benefits in excess of those received by Class A members. See Hearing Examiner op. at 25; *Kelley v. SERB,* No.2002–02, slip op. of State Employees' Retirement Bd. at 8 (SERB April 7, 2005) (SERB op.). Since Act 9 was also intended to offer enhanced benefits to certain state employees, we agree that the exclusion of Class E–1 members, who were already entitled to separate benefit enhancements, constitutes a classification with a rational basis. The Legislature may rationally intend to restrict state employees who already enjoyed separate categories of increased benefits from Class AA benefits. Because the Class AA restriction on membership was rationally related to the legitimate state purpose of limiting enhanced benefits to certain Class A members who

---

7. 71 Pa.C.S. § 5306(a.1) also excludes members of Class C, Class D–3 and Class E–2. The Hearing Examiner observed that members of these "special classes" are entitled to receive enhanced benefits in excess of those of the rank and file Class A members. Hearing Examiner op. at 25.

were not included in the other categories offering enhanced benefits, the Legislature's exclusion of Class E–1 members from electing Class AA membership is not constitutionally infirm.

SERB additionally determined that the estimates of SERS's consulting actuaries, as set forth in the parties' stipulations, demonstrated that if Appellant succeeded on his claim, the Retirement System would incur significant costs. Section 1(2) of Act 9 specifies that even with the increases in benefits provided by the new classifications, the pension funds are projected to maintain a fully funded status. It is rational to predict that if the Act 9 membership classes were expanded as Appellant requests, the "fully funded" status of the employee pension funds could be compromised. Therefore, in setting limitations on the election of Class AA membership, the General Assembly may have legitimately concluded that an extension of Class AA membership to include Class E–1 employees would have an adverse economic impact on SERS' limited resources.

 Appellant asserts that financial expediency does not justify an otherwise arbitrary classification. However, based on the above discussion, the classification is not arbitrary. In addition, where the distribution of economic benefits is involved, the General Assembly is free to create classifications so long as those classifications do not discriminate against suspect classes and they bear some rational relationship to legitimate state purposes. *Martin v. Unemployment Comp. Bd. of Review*, 502 Pa. 282, 291, 466 A.2d 107, 111 (1983). "The state's duty to maintain the fiscal integrity of the retirement fund through actuarial soundness is a valid basis for some changes in a retirement system." *Ass'n of Pa. State Coll. and Univ. Faculties v. State Sys. of Higher Ed.*, 505 Pa. 369, 377, 479 A.2d 962, 966 (1984).[8] Although the precise

8. Appellant again relies on the opinion in support of affirmance in *Klein* to support his contention that fiscal soundness cannot be achieved at the expense of individuals such as himself. We reiterate that the equal protection analysis in *Klein* has never, in the context of compensation for elected officials, been adopted by a majority of this court. *See*

financial impact that SERS would sustain if Appellant succeeded on his claims is not enumerated in the record, we specified in *Martin* that the Legislature need not justify its logical presumptions with statistical evidence, and the courts do not require record evidence to justify a classification. *Martin*, 502 Pa. at 292, 466 A.2d at 111–12. "Economic legislation is valid unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that a court can only conclude that the Legislature's actions were irrational." *Martin*, 502 Pa. at 295, 466 A.2d at 113. This is a heavy burden that Appellant has failed to carry.

While section 5306(a.1)(3) may have created an inequity in precluding Appellant from receiving Class AA credit for his past legislative service, equal protection does not prohibit the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. Appellant chose to become a Class E–1 member. Classifications are permissible where they rest upon some ground of difference which justifies the classification and has a fair and substantial relationship to the object of the legislation. *Curtis*, 542 Pa. at 255, 666 A.2d at 268. "Inequalities may result as long as some reasonable basis is apparent for the classification." *Goodman v. Kennedy*, 459 Pa. 313, 325, 329 A.2d 224, 230 (1974). Such inequities in the distribution of benefits as found here are an unfortunate concomitant of complex socio-economic legislation which must ultimately reflect a balance between legislative efforts to provide pension benefits to a multitude of state employees and the administrative and fiscal realities of allocating scarce financial resources. Consequently, Appellant could not convert his Class A service to Class AA.

> *Harper*, 538 Pa. at 524, 649 A.2d at 645. Furthermore, *Klein* is distinguishable from the instant case. In *Klein*, fiscal integrity alone was determined to be insufficient to overcome the heightened strict scrutiny standard at issue there whereas the instant case calls for a rational basis standard of review.

## IV. Class D–4

Our threshold inquiry with respect to Appellant's application for Class D–4 membership is whether his request to convert his Class A service to Class D–4 service conformed with the requirements of 71 Pa.C.S § 5306.2(a) of the Retirement Code. Section 5306.2(a) reads as follows:

(a) *General rule.* A member of the General Assembly who on the effective date of this section is eligible for Class D–4 membership may elect to become a member of Class D–4. **The election to become a Class D–4 member must be made by the member of the General Assembly by filing written notice with the board before July 1, 2001, or before the member terminates State service as a member of the General Assembly, whichever occurs first.**

71 Pa.C.S § 5306.2 (emphasis added).

Section 5306.2, which became effective on May 17, 2001, requires members of the General Assembly seeking Class D–4 status to elect Class D4 membership before they terminate state service as a member of the General Assembly, or on July 1, 2001, whichever occurred first. Appellant terminated his Senate service on November 30, 1988. Therefore, at the time he attempted to elect Class D–4 membership, he was no longer a member of the General Assembly. As such, Appellant was ineligible for election of Class D–4 membership since such election was restricted to members of the General Assembly.

Appellant also asserts that section 5306.2, which restricts election of Class D–4 to members of the General Assembly and which sets forth the time requirements within which a Class D–4 election must be made, is unconstitutional on its face as it violates the equal protection clause by limiting the election of Class D–4 membership to members of the General Assembly. On the same grounds, Appellant asserts that 71 Pa.C.S. § 5306(a.2), which sets forth the specific requirements

for Class D–4 membership, is unconstitutional. Section 5306(a.2) reads, in pertinent part, as follows:

Class of membership for members of the General Assembly.

(1) A person who:

(i) becomes a member of the General Assembly and an active member of the system after June 30, 2001; or

(ii) is a member of the General Assembly on July 1, 2001, but is not an active member of the system because membership in the system is optional pursuant to section 5301 and who becomes an active member after June 30, 2001;

and who was not a State police officer on or after July 1, 1989, shall be classified as a Class D–4 member and receive credit as a Class D–4 member for all State service as a member of the General Assembly upon payment of regular member contributions for Class D–4 service and, subject to the limitations contained in subsection (a.1)(7), if previously a member of Class A or employed in a position for which Class A service could have been earned, shall receive Class AA service credit for all Class A State service, other than State service performed as a State police officer or for which a class of service other than Class A or Class D–4 was or could have been elected or credited.

(2) Provided an election to become a Class D–4 member is made pursuant to section 5306.2 (relating to elections by members of the General Assembly), a State employee who was not a State police officer on or after July 1, 1989, who on July 1, 2001, is a member of the General Assembly and an active member of the system and not a member of Class D–3 shall be classified as a Class D–4 member and receive credit as a Class D–4 member for all State service performed as a member of the General Assembly not credited as another class other than Class A upon payment of regular member contributions for Class D–4 service and, subject to the limitations contained in paragraph (a.1)(7), shall receive Class AA service credit for all Class A State service, other than State service performed as a State police officer or as a

State employee in a position in which the member could have elected a class of service other than Class A, performed before July 1, 2001.

. . .

71 Pa.C.S. 5306(a.2).

Appellant argues that 71 Pa.C.S. 5306 permitted those members of the General Assembly who were state legislators on or after July 1, 2001 to receive enhanced Class D–4 benefits while precluding from Class D–4 state employees who were no longer members of the state legislature on July 1, 2001. He asserts that because legislators who were active members of the General Assembly on the date Class D–4 membership became effective were able to receive Class D–4 benefits for their service prior to July 1, 2001, section 5306 unfairly and arbitrarily precludes him from enjoying Class D–4 benefits for his similar previous years of legislative service.

We have explained that the Legislature's decision to exclude certain SERS members on grounds of financial expedience constituted a rational basis for exclusion from a retirement class. The Legislature's decision to exclude from Class D–4 those state employees who on July 1, 2001, were not members of the General Assembly has a basis in fiscal soundness. If Appellant were successful on his claim such that all former legislators were granted Class D–4 status, the financial impact on the retirement system would be substantial. This financial burden constitutes a sufficient rational basis for the Legislature's decision to limit membership in Class D–4 to legislators who were members of the General Assembly on July 1, 2001, the date on which Class D–4 membership became effective.

Furthermore, in requiring those who elect class D–4 membership to be active members of the General Assembly, the Legislature ensured that those who benefited from the Class D–4 enhancements would consequently be making the required increased contributions towards their pensions.[9] The

9. We note that not all members of Class AA were required to make the increased contributions necessary for Class AA membership since it was

Legislature's interest in having Class D–4 members make future contributions towards their pension constitutes an additional rational basis to limit the election of Class D–4 membership to legislators who were members of the General Assembly on July 1, 2001. Consequently, because the exclusion of Appellant from membership in Class D–4 is supported by legitimate purposes, the Act 9 classifications limiting membership to Class D–4 pass constitutional muster. Appellant was unable to elect membership in Class D–4 as he was not a member of the General Assembly at the time he attempted to make this election. Therefore, Appellant is precluded from converting his Class A service to Class D–4.

For all the foregoing reasons, we reverse the Commonwealth Court regarding Class AA membership and affirm regarding Class D–4 membership. Jurisdiction is relinquished.

Justice SAYLOR did not participate in the consideration or decision of this case.

Chief Justice CAPPY, and Justice CASTILLE, EAKIN, BAER, and FITZGERALD join the opinion.

---

possible that a state employee could elect Class AA membership and retire before being required to make any of the increased contributions associated with Class AA membership. We agree with the Commonwealth Court that the Legislature has an interest in requiring class members to make the contributions associated with that class. However, the Legislature in enacting section 5306 opted to forgo that interest, and, to a limited degree, permit membership in Class AA without the payment of increased contributions by permitting members to elect Class AA membership and retire before January 1, 2002 when membership in Class AA became effective. In excluding Appellant, as a Class E–1 member from Class AA, the Legislature, as we have explained, possessed sufficient separate and distinct rational bases to overcome his constitutional challenge that he was impermissibly barred from Class AA.